J-S22015-23

2023 PA Super 256

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DONALD A. HAGAN | : | |
| Appellant | : | No. 872 WDA 2022 |

Appeal from the PCRA Order Entered June 30, 2022
In the Court of Common Pleas of Venango County Criminal Division at
No(s): CP-61-CR-0000242-2015

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DONALD A. HAGAN | : | |
| Appellant | : | No. 928 WDA 2022 |

Appeal from the PCRA Order Entered June 30, 2022
In the Court of Common Pleas of Venango County Criminal Division at
No(s): CP-61-CR-0000116-2009

BEFORE:  OLSON, J., STABILE, J., and MURRAY, J.

OPINION BY OLSON, J.:                    **FILED: DECEMBER 6, 2023**

In this consolidated appeal,[1] Appellant, Donald A. Hagan, appeals from

the June 30, 2022 order entered in the Court of Common Pleas of Venango

---

[1] Appellant filed a separate notice of appeal at each trial court docket in compliance with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), and its progeny, as well as Pennsylvania Rule of Appellate Procedure 341.  **See** Pa.R.A.P. 341 *Comment*.

In an August 22, 2022 *per curiam* order, this Court consolidated *sua sponte* the two appeals docketed in this Court at 872 WDA 2022 and 928 WDA 2022.

County that dismissed a filing originally styled as a petition for *writ of habeas corpus*. The PCRA court treated Appellant's submission as a petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.[2] Following argument, the PCRA court dismissed Appellant's filing. We affirm.

The record demonstrates that, on November 13, 1992, Appellant was convicted of involuntary deviate sexual intercourse ("IDSI").[3] Appellant was sentenced to 7 to 14 years' incarceration for his conviction. Trial Court Opinion, 7/1/16, at 3. Appellant was not subject to registration requirements at the time of his conviction and sentencing but, with the subsequent passage of Megan's Law I in 1996, he became subject to registration with the Pennsylvania State Police as a sexual offender.[4] *See* 42 Pa.C.S.A. §§ 9791-9799.9 (effective, generally, Apr. 22, 1996, to Jul. 9, 2000).

_____

[2] We shall refer to the court in which Appellant originally filed his submission as the "PCRA court," although, as discussed more fully *infra*, we shall evaluate certain issues raised by Appellant's claims outside the context of the PCRA.

[3] 18 Pa.C.S.A. § 3123 (effective Jun. 6, 1973, to Feb. 6, 2003). Appellant's conviction stemmed from his sexual assault of a thirteen-year-old male acquaintance. Trial Court Opinion, 7/1/16, at 3.

[4] At a hearing before the PCRA court, counsel for Appellant asserted that Appellant was subject to a 10-year registration period, a fact that was not disputed by the Commonwealth. N.T., 6/30/22, at 4. The record, however, is unclear as to the exact period of registration Appellant was subjected to as a result of his 1992 conviction. With the passage of Megan's Law I in April 1996, Section 9793(a) required a person previously convicted of IDSI to register for a period of 10 years. *See* 42 Pa.C.S.A. § 9793(a), (b)(1), and (b)(2) (effective Apr. 22, 1996, to Jul. 9, 2000). Section 9795(a) of Megan's

While Appellant remained incarcerated for his 1992 IDSI conviction, Pennsylvania's sexual offender registration laws continued to evolve. In *Commonwealth v. Williams*, 733 A.2d 593 (Pa. 1999), *cert. denied*, 528 U.S. 1077 (2000) ("*Williams I*"), our Supreme Court invalidated the SVP provisions of Megan's Law I after determining that those procedures violated procedural due process. *Williams*, 733 A.2d at 608. This determination arose from our Supreme Court's conclusion that a finding of SVP status under Megan's Law I entailed a separate factual determination that ultimately increased a sexual offender's maximum term of confinement above the statutory maximum for the underlying offense. *Id*. at 603. After *Williams I* was decided, the General Assembly passed Megan's Law II, which was signed into law on May 10, 2000, and became effective July 9, 2000.[5] *See* Act of

_____

Law I, however, required a person designated as a sexually violent predator ("SVP") to register continuously unless a trial court determined that the person was no longer an SVP. *See* 42 Pa.C.S.A. § 9795(a) (effective Apr. 22, 1996, to Jul. 9, 2000); *see also* 42 Pa.C.S.A. § 9794(b) (effective Apr. 22, 1996, to Jul. 9, 2000) (stating that a person convicted of, *inter alia*, IDSI, was presumed to be an SVP unless that person rebutted the presumption with clear and convincing evidence to the contrary).

For purpose of our disposition, we accept Appellant's assertion that he was subjected to a 10-year registration period upon enactment of Megan's Law I as a result of this 1992 IDSI conviction. *See* 42 Pa.C.S.A. § 9793(b) (effective Apr. 22, 1996, to Jul. 9, 2000).

[5] Relative to the case *sub judice*, pursuant to Section 9795.1(b) of Megan's Law II, Appellant became subject to lifetime registration as a result of his 1992 IDSI conviction. *See* 42 Pa.C.S.A. § 9795.1(b) (effective Jul. 9, 2000, to Dec. 20, 2012).

May 10, 2000, P.L. 74, No. 18. Thereafter, the General Assembly enacted additional changes to Megan's Law II with the passage of the Act of November 24, 2004, P.L. 1243, No. 152 ("Act 152"), commonly referred to as Megan's Law III, which was signed into law on November 24, 2004, and became effective January 24, 2005.[6] *See Commonwealth v. Neiman*, 84 A.3d 603, 607 (Pa. 2013). Relevant to this appeal, as developed in greater detail *infra*, one of the legislative enactments ushered in by Megan's Law III involved an addition to the Crimes Code codified at Section 4915(a)(1), which made it a criminal offense when a sexual offender, subject to registration, failed to register his or her residential address with the Pennsylvania State Police. *See* 18 Pa.C.S.A. § 4915(a)(1) (effective Jan. 1, 2007, to Feb. 20, 2012) (stating, in pertinent part, that, "an individual who is subject to registration under 42 Pa.C.S.[A.] § 9795.1(b) or who was subject to registration under former 42 Pa.C.S[A.] § 9793 (relating to registration of certain offenders for ten years) commits an offense if he[, or she,] knowingly fails to[] register with the Pennsylvania State Police" (format modified)).

As a result of unrelated events in January 2009, police discovered that Appellant, as a sexual offender subject to lifetime registration, failed to

---

[6] Relative to the case *sub judice*, Appellant remained subject to lifetime registration for his 1992 conviction of IDSI pursuant to Section 9795.1(b) of Megan's Law III. *See* 42 Pa.C.S.A. § 9795.1(b) (effective Jul. 9, 2000, to Dec. 20, 2012).

register his then-current residential address.[7]  Accordingly, the Commonwealth charged Appellant, at trial court docket CP-61-CR-0000116-2009 ("CR-116-2009"), with failure to comply with registration of sexual offender requirements, 18 Pa.C.S.A. § 4915(a)(1).  On June 19, 2009, a jury convicted Appellant of violating Section 4915(a)(1).  The trial court subsequently sentenced Appellant on July 28, 2009, to 40 to 120 months' incarceration for his conviction under Section 4915(a)(1).[8]

This Court affirmed Appellant's judgment of sentence at CR-116-2009 on October 21, 2010, and Appellant did not seek discretionary review with our Supreme Court.  *Commonwealth v. Hagan*, 15 A.3d 537, 2010 WL 5697370 (Pa. Super. filed Oct. 21, 2010) (unpublished memorandum).  As such, Appellant's judgment of sentence at CR-116-2009 became final on Monday,

---

[7] As discussed *supra*, Appellant was convicted in 1992 of IDSI involving a minor.  At the time of his conviction, Appellant was not subject to registration as a sexual offender because statutory schemes aimed at monitoring sexual offenders (*i.e.*, Megan's Law I, and its progeny) had not yet been enacted.  With the enactment of Megan's Law I in April 1996, Appellant, as a sexual offender convicted of IDSI involving a minor, became subject to a 10-year registration period upon his release from incarceration pursuant to Section 9793(a) and (b)(1) of Megan's Law I.  When Megan's Law II became effective in July 2000, Appellant became subject to lifetime registration upon his release from incarceration pursuant to Section 9795.1(b)(2).  When Megan's Law III became effective in January 2005, Appellant remained subject to lifetime registration pursuant to Section 9795.1(b)(2).  As such, when Appellant was arrested and charged with violating Section 4915(a)(1) in January 2009, Appellant was subject to lifetime registration.

[8] The trial court denied Appellant's post-sentence motion for reconsideration of his sentence on August 7, 2009.  As discussed *infra*, no registration requirements attached to Appellant's conviction at CR-116-2009.

November 22, 2010. *See* 42 Pa.C.S.A. § 9545(b)(3) (stating, "[a] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review"); *see also* Pa.R.A.P. 1113(a) (requiring a petition for allowance of appeal to be filed within 30 days after entry of an order of this Court sought to be reviewed); 1 Pa.C.S.A. § 1908 (stating that, whenever the last day of any period of time referred to in a statute "shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation").

On April 1, 2015, Appellant, while incarcerated for his 2009 conviction for failure to register, was charged at trial court docket CP-61-CR-0000242-2015 ("CR-242-2015") with rape – forcible compulsion, involuntary deviate sexual intercourse – threat of forcible compulsion, and sexual assault.[9]  On October 19, 2015, Appellant pled guilty, pursuant to a negotiated plea agreement, to one count each of indecent assault – forcible compulsion and indecent assault – threat of forcible compulsion.[10]  On July 22, 2016, the trial court sentenced Appellant to 16 to 60 months' incarceration on each of the two aforementioned convictions.  The periods of incarceration

---

[9] 18 Pa.C.S.A. §§ 3121(a)(1), 3123(a)(2), and 3124.1, respectively.  These criminal charges stemmed from Appellant's sexual assault of his son between September 2006, and September 2007.  Trial Court Opinion, 7/1/16, at 2.

[10] 18 Pa.C.S.A. §§ 3126(a)(2) and 3126(a)(3), respectively.

were set to run concurrently to each other, and set to run consecutively to all senteces previously imposed on Appellant. On August 4, 2016, the trial court, having designated Appellant an SVP at CR-242-2015,[11] notified Appellant that, as a result of his convictions, he was subject to lifetime registration with the Pennsylvania State Police pursuant Section 9799.15(a)(6) of SORNA.[12] *See* 42 Pa.C.S.A. § 9799.15(a)(6) (effective Dec. 20, 2012, to Feb. 20, 2018). Appellant did not pursue a direct appeal of his July 22, 2016 judgment of sentence with this Court. Therefore, Appellant's judgment of sentence at CR-242-2015 became final on Monday, August 22, 2016. *See* Pa.R.A.P. 903(a) (explaining that, an appellant has "30 days after the entry of the order from which the appeal is taken" in which to file a notice of appeal); *see also* 42 Pa.C.S.A. § 9545(b)(3); 1 Pa.C.S.A. § 1908.

After the trial court imposed its sentence at CR-116-2009 on July 28, 2009, but before Appellant's sentence was imposed at CR-242-2015 on July 22, 2016, our Supreme Court, in ***Neiman***, ***supra***, invalidated Megan's Law III, including Section 4915(a)(1) (the provision of the Crimes Code used to prosecute Appellant's failure to comply with registration requirements at

---

[11] ***See*** 42 Pa.C.S.A. § 9799.24 (effective Dec. 20, 2012, to Jun. 29, 2021) (setting forth the assessment process for determining whether an individual meets the criteria for SVP status under the Sex Offender Registration and Notification Act ("SORNA"), codified at 42 Pa.C.S.A. §§ 9799.11 to 9799.40).

[12] Under the then-current Section 9799.14(c)(1.3) of SORNA, Appellant's convictions were designated Tier II sexual offenses. 42 Pa.C.S.A. § 9799.14(c)(1.3) (effective Sept. 2, 2014, to Feb. 20, 2018).

CR-116-2009), because passage of Act 152 violated the single subject rule of the Pennsylvania Constitution.[13] **Neiman**, 84 A.3d at 605, 613, 615-616. Thereafter, in 2017, our Supreme Court, in **Commonwealth v. Derhammer**, 173 A.3d 723 (Pa. 2017), clarified the implications of **Neiman** and held that the Commonwealth lacked authority to prosecute a defendant for violating Section 4915 after **Neiman** invalidated Megan's Law III. **Derhammer**, 173 A.3d at 728-731. In 2020, our Supreme Court, in **Commonwealth v. McIntyre**, 232 A.3d 609 (Pa. 2020), agreed that McIntyre (a petitioner for collateral relief) was entitled to the relief he requested where he asserted, in

_____

[13] The single subject rule of Article III, Section 3 of the Pennsylvania Constitution provides,

### § 3. Form of bills

No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

PA CONST. art. III, § 3.

The **Neiman** Court stressed that its act of invalidating Act 152, which enacted, _inter alia_, Megan's Law III and Section 4915, because the passage of the legislative act violated the single subject rule "should not, in any way, be read as a repudiation of the merits of the various legislative components of Act 152 such as Megan's Law III, which serves a vital purpose in protecting our Commonwealth's citizens and children, in particular, from victimization by sexual predators." **Neiman**, 84 A.3d at 615.

a timely PCRA petition,[14] that his conviction and sentence under Section 4915 were unlawful since Section 4915 was invalid from its inception. *McIntyre*, 232 A.3d at 617 n.13, 619.

On December 20, 2021, Appellant filed *pro se* at CR-116-2009 and CR-242-2015 a petition for *writ* of *habeas corpus*.[15] Counsel was appointed to represent Appellant on January 7, 2022, and subsequently filed an amended petition for *writ* of *habeas corpus* on May 6, 2022. The amended petition alleged that Appellant was entitled to relief under *Neiman*, *Derhammer*, and *McIntyre*. The PCRA court entertained argument on Appellant's petition for *writ* of *habeas corpus* on June 30, 2022, and, thereupon, concluded that Appellant's December 2021 submission should be treated as a petition for collateral relief under the PCRA. That same day, the PCRA court denied

_____

[14] As discussed *infra*, Appellant raises the same legal contention presented to our Supreme Court in *McIntyre*, except that Appellant raises his claim in the context of a patently untimely petition for collateral relief.

[15] Appellant's petition for *writ* of *habeas corpus* was timestamped as having been received by the PCRA court on December 28, 2021. Pursuant to the "prisoner mailbox rule," we deem Appellant's petition for *writ* of *habeas corpus* as filed on December 20, 2021. *See Pro Se* Petition for *Writ* of *Habeas Corpus*, 12/20/21, at Proof of Service (noting that, Appellant served his petition on the PCRA court on December 20, 2021); *see also Commonwealth v. Jones*, 700 A.2d 423, 426 (Pa. 1997) (explaining that, pursuant to the prisoner mailbox rule, a document is deemed filed on the date an inmate deposits the mailing with prison authorities or places it in the prison mailbox).

Appellant's December 2021 filing.[16]  PCRA Court Order, 6/30/22  This appeal followed.[17]

Appellant raises the following issues for our review:

[1.]  Whether [Appellant's petition for] *writ* of *habeas corpus*[] is an allowable procedural mechanism[] to challenge[] the sexual offender registration statute[?]

[2.]  Whether [Appellant's] conviction[] in 2009 for failure to register violate[s] the *ex post facto* laws of the United States and Pennsylvania constitutions and this being the case, the Commonwealth cannot hold [Appellant] criminally liable for violating Section [] 4915(a)(1) of the Crimes Code[?]

Appellant's Brief at 4 (extraneous capitalization omitted).[18]

_____

[16] Specifically, the PCRA court stated,

[Appellant's] petition for *writ* of *habeas corpus*, with respect to [CR-116-2009], is dismissed due to [the PCRA] court's lack of jurisdiction since that sentence has expired in its entirety.  With respect to [Appellant's] petition for *writ* of *habeas corpus* concerning [CR-242-2015, the PCRA] court finds that [a petition for *writ* of] *habeas corpus* is not the proper procedure to appeal any issues in that case, as the only relief that may be granted, is through a [PCRA] hearing.

PCRA Court Order, 6/30/22 (extraneous capitalization and formatting modified).

[17] Both Appellant and the PCRA court complied with Pennsylvania Rule of Appellate Procedure 1925.

[18] For ease of disposition, we reorganized Appellant's issues.

Appellant's first issue challenges the PCRA court's treatment of his petition for *writ* of *habeas corpus* as a PCRA petition. *Id.* at 8-14.[19] Appellant asserts that, pursuant to our Supreme Court's decision in ***Commonwealth v. Lacombe***, 234 A.3d 602 (Pa. 2020), he "may challenge the application of a sexual offender registration statute outside the framework of the PCRA." *Id.* at 8, *citing* ***Lacombe***, 234 A.3d at 618. Appellant contends that his petition for *writ* of *habeas corpus* is "the proper vehicle" to raise a constitutional challenge to the sentences imposed at CR-116-2009 and CR-242-2015 and, therefore, his December 2021 filing is not subject to the PCRA's jurisdictional limitations or the requirement that he currently be incarcerated to be eligible for relief.[20] Appellant's Brief at 9.

In so arguing, we find Appellant raises a challenge to the PCRA court's determination that it lacked jurisdiction at CR-116-2009 and CR-242-2015 to grant Appellant's request for relief. Because jurisdiction is purely a question

_____

[19] In his appellate brief, Appellant raises two distinct issues. Appellant's Brief at 4. A review of the argument section of Appellant's brief, however, reveals a single argument in support of both issues. Pennsylvania Rule of Appellate Procedure 2119(a) requires the argument section of an appellate brief to be "divided into as many parts as there are questions to be argued[.]" Despite Appellant's failure to adhere to Rule 2119(a), we decline to find waiver of his issues.

[20] Appellant filed his petition for *writ* of *habeas corpus* at both CR-116-2009 and CR-242-2015. Because each PCRA court docket involves unique issues, we address Appellant's issues separately within the context of each PCRA court docket.

of law, our standard of review is *de novo*, and our scope of review is plenary. ***Commonwealth v. Merced***, 265 A.3d 786, 789 (Pa. Super. 2021).

### CR-116-2009

It is well-established that "the PCRA subsumes the remedy of *habeas corpus* with respect to remedies offered under the PCRA[.]" ***Commonwealth v. Peterkin***, 722 A.2d 638, 640 (Pa. 1998); ***see also*** 42 Pa.C.S.A. § 6542 (stating, a PCRA petition "shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including *habeas corpus* and *coram nobis*"); ***Commonwealth v. Taylor***, 65 A.3d 462, 465-466 (Pa. Super. 2013) (stating, "[u]nless the PCRA [cannot] provide[] a potential remedy, the PCRA statute subsumes the *writ* of *habeas corpus*"); ***Commonwealth v. Powell***, 290 A.3d 751, 758 (Pa. Super. 2023). "Issues that are cognizable under the PCRA must be raised in a timely PCRA petition and cannot be raised in a *habeas corpus* petition." ***Taylor***, 65 A.3d at 466. Regardless of how a petition is titled, courts are to treat a petition filed after a judgment of sentence becomes final as a PCRA petition if it requests relief contemplated by the PCRA. ***Commonwealth v. Wrecks***, 934 A.2d 1287, 1289 (Pa. Super. 2007); ***see also Commonwealth v. Torres***, 223 A.3d 715, 716 (Pa. Super. 2019) (stating, "so long as a pleading falls within the ambit of the PCRA, the court should treat any pleading filed after the judgment of sentence is final as a PCRA petition" (citation omitted)); ***Commonwealth v. Hromek***, 232 A.3d 881, 884 (Pa. Super. 2020) (affirming the ***Wrecks***'

holding that regardless of how a filing is titled, a petition should be treated as filed under the PCRA if it is filed after the judgment of sentence becomes final and seeks relief provided under the PCRA).

Recently, however, our Supreme Court held that a petition filed pursuant to the PCRA was not the "exclusive method for challenging sexual offender registration statutes[.]" *Lacombe*, 234 A.3d at 618. In other words, challenges to the sexual offender registration statutes asserting, for example, that the registration statutes violate the constitutional prohibition against *ex post facto* laws, may be raised in, *inter alia*, a petition for *writ* of *habeas corpus*.[21]

_____

[21] In Pennsylvania, constitutional principles applicable to the *ex post facto* doctrine are coextensive under federal and state law.

> Both the United States Constitution and the Pennsylvania Constitution prohibit the enactment of *ex post facto* laws. [*See*] U.S. CONST. art. I, § 10; [*see also*] PA CONST. art. I, § 17. Our Supreme Court has interpreted these constitutional *ex post facto* clauses to be effectively identical. *Commonwealth v. Woodruff*, 135 A.3d 1045, 1048 (Pa. Super. 2016)[,] *citing Commonwealth v. Young*, [] 637 A.2d 1313 ([Pa.] 1993)[.] The purpose of this proscription is "to preserve for persons the right to fair warning that their conduct will give rise to criminal penalties." *Commonwealth v. Grady*, [] 486 A.2d 962, 964 ([Pa. Super.] 1984)[,] *quoting Commonwealth v. Hoetzel*, [] 426 A.2d 669, 672 ([Pa. Super.] 1981)[.] We have explained that "a state law violates the *ex post facto* clause if it was adopted after the complaining party committed the criminal acts and 'inflicts a greater punishment than the law annexed to the crime, when committed.'" *Commonwealth v. Fleming*, 801 A.2d 1234, 1237 (Pa. Super. 2002).

In the case *sub judice*, Appellant presents his challenge to the sentence imposed at CR-116-2009 as a challenge to the sexual offender registration statute commonly referred to as SORNA.[22]  Appellant's Brief at 14 (stating, "because [Appellant] could not be subject to SORNA's registration requirements, the Commonwealth could not hold [Appellant] criminally liable for violating [Section] 4915(a)(1) of the Crimes Code").   Specifically, Appellant contends,

> [he committed and] was convicted of [IDSI] in 1992.  [At that time,] there was no sexual offender[] registration law in existence.   [Appellant] was not subject at that time to any reporting requirements[.]  In 1995, three years after [Appellant] was convicted of IDSI, Pennsylvania enacted Megan's Law [I], and [Appellant] was then required to register for 10 years [upon completing his term of incarceration.]  In 2012, [Appellant] was required to register for life *vis*[-]*a*[-]*vis* SORNA.  The triggering offense occurred in 1992.  SORNA is being applied to [Appellant] retroactively.  SORNA is punitive.  [Appellant] was convicted of IDSI in 1992.   [Appellant] faced no punishment beyond his imposed [term of incarceration.]  Thus, because [Appellant] could not be subject to SORNA's registration requirements, the

---

**Commonwealth v. Kizak**, 148 A.3d 854, 856-857 (Pa. Super. 2016) (original brackets omitted), *overruled on other grounds by **Commonwealth v. Lippincott***, 208 A.3d 143 (Pa. Super. 2019) (*en banc*).

[22] SORNA was enacted as part of the Act of December 20, 2011, P.L. 446, No. 111, and became effective on December 20, 2012.  "Among a litany of new substantive provisions, SORNA created a three-tiered system to categorize [sexual] offenders."  **Commonwealth v. Santana**, 266 A.3d 528, 531 (Pa. 2021).  Pursuant to Section 9799.14(d)(4) of SORNA, IDSI was classified as a Tier III sexual offense.  42 Pa.C.S.A. § 9799.14(d)(4) (effective Dec. 20, 2012, to Jun. 11, 2018).  As a Tier III offense, a person convicted of IDSI was subject to lifetime registration upon release from incarceration pursuant to Section 9799.15(a)(3) of SORNA.  42 Pa.C.S.A. § 9799.15(a)(3) (effective Dec. 20, 2012, to Jun. 11, 2018).

> Commonwealth could not hold [Appellant] criminally liable for violating [Section] 4915(a)(1) of the Crimes Code.

*Id.* at 14. In so arguing, Appellant attempts to characterize his petition for *writ* of *habeas corpus* as a challenge to retroactive application of SORNA, which falls within the purview of **Lacombe** and which escapes PCRA jurisdictional requirements. We find Appellant's reliance on **Lacombe** to be misplaced.

We begin by reiterating that Appellant's 2009 conviction at CR-116-2009 was for failure to register as a sexual offender under Section 4915(a)(1) of the Crimes Code. By 2009, and specifically by January 2009, when Appellant was arrested and charged with failure to register under Section 4915(a)(1), Appellant's lifetime registration requirement based upon his 1992 IDSI conviction was fixed by Megan's Law III, **not** SORNA. **See** 42 Pa.C.S.A. § 9795.1(b)(2) (effective Jan. 24, 2005, to Dec. 19, 2012). Upon Appellant's conviction of Section 4915(a)(1) following a jury trial, the trial court sentenced Appellant to 40 to 120 months' incarceration. Because a conviction of Section 4915(a)(1) – failure to register is not a sexual offense, however, the trial court, in sentencing Appellant at CR-116-2009, could not impose a registration obligation under Megan's Law III.[23] As such, no

_____

[23] Under Megan's Law III, which was effective at the time of Appellant's conviction of Section 4915(a)(1), individuals convicted of the following sexual offenses were subject to a 10-year registration period: 18 Pa.C.S.[A. §§ ]2901 (relating to kidnapping) where the victim is a minor[,] 2910 (relating to luring a child into a motor vehicle or structure)[,] 3124.2 (relating to institutional

- 15 -

registration requirement attached to Appellant's sentence at CR-116-2009 under Megan's Law III or later under SORNA, when SORNA became effective on December 20, 2012.

As noted *supra*, in **Lacombe**, our Supreme Court declined "to find the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes[.]" **Lacombe**, 234 A.3d at 618. In so finding, our Supreme Court recognized the well-established requirement that a PCRA petition, in order to be timely, must be filed within one year of the judgment of sentence becoming final. **Id.** at 617, *citing* 42 Pa.C.S.A. § 9545(b)(1). The **Lacombe** Court recognized that if a PCRA petition were the sole means of challenging a sexual offender registration statute, many registrants would be time-barred from raising such a challenge

---

sexual assault)[,] 3126 (relating to indecent assault) where the offense is graded as a misdemeanor of the first degree or higher[,] 4302 (relating to incest) where the victim is 12 years of age or older but under 18 years of age[,] 5902(b) (relating to prostitution and related offenses) where the actor promotes the prostitution of a minor[,] 5903(a)(3), (4), (5) or (6) (relating to obscene and other sexual materials and performances) where the victim is a minor[,] 6312 (relating to sexual abuse of children)[,] 6318 (relating to unlawful contact with minor)[, and] 6320 (relating to sexual exploitation of children). **See** 42 Pa.C.S.A. § 9795.1(a)(1) (effective Dec. 8, 2008, to Dec. 19, 2012) (formatting modified). Under Megan's Law III, individuals convicted of the following sexual offenses were subject to a lifetime registration: 18 Pa.C.S.[A. §§ ]3121 (relating to rape)[,] 3123 (relating to involuntary deviate sexual intercourse)[,] 3124.1 (relating to sexual assault)[,] 3125 (relating to aggravated indecent assault)[, and] 4302 (relating to incest) when the victim is under 12 years of age. **See** 42 Pa.C.S.A. § 9795.1(b)(2) (effective Dec. 8, 2008, to Dec. 19, 2012) (formatting modified).

because their judgments of sentence would have become final well-before their registration periods started, or they would be ineligible for collateral relief because they were no longer serving a sentence. *Lacombe*, 234 A.3d at 617-618 (noting that, Section 9543(a)(1) of the PCRA requires a petitioner to be serving a sentence to be eligible for collateral relief). The *Lacombe* Court explained that the ability to raise a challenge to a sexual offender registration statute in a vehicle other than a PCRA petition took "into account the fact that frequent changes to sexual offender registration statutes, along with more onerous requirements and retroactive application, complicate registrants' ability to challenge new requirements imposed years after their sentences become final." *Id.* at 617.

The decision announced in *Lacombe* offered registrants an opportunity to challenge current or future registration requirements through a procedural mechanism other than a PCRA petition when the registrant has fulfilled his or her sentence, has been released from incarceration, and the registration requirements have begun. Common procedural devices used to challenge punitive registration schemes outside the scope of the PCRA include: (1) petitions to enjoin the Pennsylvania State Police from enforcing registration requirements; (2) petitions to terminate registration requirements; and, (3) petitions to enforce negotiated plea bargain agreements. Appellant's instant petition for *writ* of *habeas corpus*, which targets the validity of his past conviction and sentence at CR-116-2009, is not exclusively directed at

challenging a current or future registration obligation but it also is not expressly excluded by **Lacombe**.

We also cannot overlook, however, the fact that Appellant's conviction at CR-116-2009 arose purely from his failure to register pursuant to the lifetime registration obligation imposed under Megan's Law III.[24] As such, in a practical sense, Appellant's claim challenges his lifetime registration obligations imposed by Megan's Law III. In support of his claim that his lifetime registration obligations violate *ex post facto* laws, Appellant relies upon our Supreme Court's decision in **Santana**, *supra*.[25] Appellant's Brief at 11-14.

In **Santana**, Santana, as a result of his 1983 conviction of rape, which was committed while he resided in New York State, became subject to SORNA's lifetime registration when he moved to Pennsylvania in 2015.[26]

_____

[24] Appellant's reliance upon SORNA as the basis of his registration requirements is misplaced. In January 2009, when Appellant failed to register his residential address pursuant to Section 4915(a)(1), Appellant was subject to lifetime registration pursuant to Megan's Law III. SORNA did not become effective until December 20, 2012, almost three years after Appellant violated Section 4915(a)(1) by failing to register his residential address.

[25] "As the constitutionality of a statute presents a pure question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Lawrence**, 99 A.3d 116, 118 (Pa. Super. 2014), *appeal denied*, 114 A.3d 416 (Pa. 2015).

[26] Under SORNA, the sexual offense of rape was designated as a Tier III offense, and Tier III offenses subjected the sexual offender to, *inter alia*, lifetime registration. **Santana**, 266 A.3d at 531.

*Santana*, 266 A.3d at 530-531. During his "check-ins" with the Pennsylvania State Police, as required under SORNA, Santana was not forthcoming with accurate information, including, *inter alia*, that he registered a telephone number and an electronic mail address on a social media application. *Id.* at 531. As a result of these infractions, Santana was charged with failure to provide accurate information under Section 4915.1(a)(3).[27] *Id.*; *see also* 18 Pa.C.S.A. § 4915.1(a)(3) (effective Dec. 20, 2012, to Feb. 20, 2018). Santana pled guilty to the Section 4915.1(a)(3) offense and was subsequently sentenced by the trial court on July 18, 2017. *Santana*, 266 A.3d at 531. The next day, our Supreme Court issued its decision in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), invalidating SORNA's registration scheme under which Santana was prosecuted."[28] *Id.* at 531. Thereafter, relying on

---

[27] Section 4915.1 of the Crimes Code was enacted as part of SORNA and became effective on December 20, 2012. *See* Act of Dec. 20, 2011, P.L. 446, No. 111. Section 4915.1 replaced Section 4915, which expired on December 19, 2012, and criminalized, *inter alia*, the failure to register and to provide accurate information when registering. 18 Pa.C.S.A. § 4915.1 (effective Dec. 20, 2012, to Feb. 20, 2018).

[28] In *Muniz*, our Supreme Court held that

> 1) SORNA's registration provisions constitute punishment notwithstanding the General Assembly's identification of the provisions as nonpunitive; 2) retroactive application of SORNA's registration provisions violate the federal *ex post facto* clause; and 3) retroactive application of SORNA's registration provision also violates the *ex post facto* clause of the Pennsylvania Constitution.

*Santana*, 266 A.3d at 533 and 533 n.18 (extraneous capitalization omitted) (noting that, the "the *ex post facto* holding arising from the Pennsylvania

*Muniz*, Santana filed a motion to withdraw his guilty plea, arguing that "applying SORNA retroactively to his 1983 New York offense constituted an *ex post facto* violation[.]" *Id.* at 531-532. The trial court denied Santana's motion, and an *en banc* panel of this Court reversed that decision. *Commonwealth v. Santana*, 241 A.3d 660 (Pa. Super. 2020) (*en banc*).

In affirming the *en banc* decision of this Court, our Supreme Court explained that "[w]hen applied retroactively, sexual offender registration laws implicate the third *Calder* category of retroactive provisions."[29] *Santana*, 266 A.3d at 537. The *Santana* Court explained that

_____

Constitution . . . represented the opinion of only a plurality of [our Supreme Court]"), *citing* *Muniz*, 164 A.3d at 1193.

[29] The *Santana* Court explained,

> [i]n *Calder v. Bull*, [3 U.S. 386 (1798),] the Supreme Court of the United States identified four types of laws that traditionally constitute *ex post facto violations*.
>
> > 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

> An *ex post facto* analysis concerning the third **Calder** category of laws distills to the following questions. First, a court must ask when the initial offense was committed. Second, the court must ask whether the challenged law was enacted after the occurrence of the triggering offense and was then applied retroactively. If so, the final question is whether that retroactive law is punitive or increases the penalty for the existing crime.

**Santana**, 266 A.3d at 537. The **Santana** Court found that in 2015, when Santana relocated to Pennsylvania, the SORNA registration requirements to which he was subjected were retroactively applied to his 1983 rape conviction.[30] **Santana**, 266 A.3d at 538. Having previously ruled in **Muniz** that SORNA's registration requirements were punitive, the **Santana** Court determined that Santana was similarly situated to Muniz in that SORNA's registration requirements were imposed retroactively to his 1983 rape conviction.[31] **Id.** at 539. As such, the **Santana** Court held that the punitive

---

**Santana**, 266 A.3d at 536, *citing* **Calder**, 3 U.S. at 390. The **Santana** Court stated that sexual offender registration laws, such as SORNA, implicate the third **Calder** category of retroactive provisions. **Santana**, 266 A.3d at 537.

[30] In determining whether SORNA's registration requirements were applied retroactively, the **Santana** Court emphasized that a court must first consider when the underlying crime that triggered the registration, *i.e.*, the sexual offense, was committed and not look to the date on which a failure to register occurred or where the sexual offense occurred, *i.e.*, New York verses Pennsylvania. **Santana**, 266 A.3d at 537 (stating, "[f]irst a court must ask when the initial offense was committed").

[31] The issue before our Supreme Court in **Santana** was whether the decision in **Muniz** – SORNA "constituted a punitive regulatory scheme that, when imposed retroactively to [sexual] offenders who committed their offenses prior to SORNA's enactment, amounted to an unconstitutional *ex post facto* law" – applied with equal force to Santana whose triggering offense occurred in another state. **Santana**, 266 A.3d at 529-530.

registration requirements of SORNA were a constitutionally infirm *ex post facto* law as they applied to Santana's case. **Id.**

In **Santana**, our Supreme Court held that a challenge to the retroactive application of SORNA's punitive registration scheme can be raised and adjudicated in the context of a failure to register prosecution. As discussed *supra*, Santana – who failed to provide accurate registration information in 2015 - was subject to unlawful retroactive application of SORNA's punitive registration requirements, owing to a 1983 rape conviction. In the *case sub judice*, Appellant – who failed to register his new residential address in January 2009 - was retroactively subjected to registration requirements under Megan's Law III (not SORNA) because of his 1992 IDSI conviction.

Although the registration requirements of Megan's Law III were retroactively applied to Appellant's 1992 IDSI conviction, key distinctions differentiate Appellant's case from **Santana**. Unlike the SORNA registration requirements considered in **Santana**, our Supreme Court has never declared the registration requirements under Megan's Law III to be punitive. Rather, our Supreme Court in **Neiman**, **supra**, invalidated Megan's Law III, which included Section 4915, because the method by which Megan's Law III and Section 4915 were enacted was unconstitutional in that Act 152, which contained amendments to deficiency judgment procedures, asbestos statutes of limitations, county police jurisdiction, Megan's Law II, and Section 4915, violated the single subject rule under Article III, Section 3 of the Pennsylvania Constitution. **Neiman**, 84 A.3d at 605; **see also McIntyre**, 232 A.3d at 615

(stating that, Megan's Law III and Section 4915 were void *ab initio* because their enactment was in violation of the single subject rule of the Pennsylvania Constitution). Absent a showing that the registration requirements under Megan's Law III were punitive, the retroactive application of that registration statute to Appellant in January 2009, did not violate the *ex post facto* laws.[32]

***Santana***, 266 A.3d at 539.

_____

[32] As noted by our Supreme Court in ***Santana***, the Supreme Court of the United States in ***Kennedy v. Mendoza-Martinez***, 372 U.S. 144 (1963)

> articulated a two-part test for deciding whether a legislative enactment is punitive. The first inquiry asks whether the legislature intended a statutory scheme to be punitive. If so, the inquiry ends. If not, the reviewing court must assess whether the statute nonetheless is punitive in its effect. This second inquiry requires consideration of the following seven factors:
>
>> [(1)] whether the sanction involves an affirmative disability or restraint, [(2)] whether it has historically been regarded as a punishment, [(3)] whether it comes into play only on a finding of scienter, [(4)] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [(5)] whether the behavior to which it applies is already a crime, [(6)] whether an alternative purpose to which it may rationally be connected is assignable for it, and [(7)] whether it appears excessive in relation to the alternative purpose assigned.

***Santana***, 266 A.3d at 538 n.46 (internal citation and original brackets omitted), *citing* ***Mendoza-Martinez***, 372 U.S. at 168-169.

In the case *sub judice*, Appellant has not undertaken an analysis of the ***Mendoza-Martinez*** two-part test to support, or even put forth a claim, that the registration requirements of Megan's Law III were punitive. ***See***

In sum, we decline Appellant's invitation to read **Lacombe** as a vehicle allowing him to challenge his 2009 conviction and sentence outside the PCRA and its restrictive jurisdictional and eligibility requirements. Our Supreme Court's decision in **Lacombe** provided a means by which registrants, disadvantaged by the jurisdictional and eligibility requirements of the PCRA, were permitted to challenge the application of punitive sexual offender registration requirements more than one year after their judgments of sentence became final or after they fulfilled their terms of incarceration. Appellant has not demonstrated that his 2009 conviction for failure to register resulted from an unlawful, retroactive application of a **punitive** sexual offender registration scheme. Moreover, no registration requirement attached to Appellant's 2009 conviction. Hence, **Lacombe** does not allow Appellant to challenge his conviction and sentence at CR-116-2009 outside the context of the PCRA. Therefore, we discern no error in the PCRA court's decision to review Appellant's petition under the PCRA.

_____

Appellant's Brief at 8-15. We decline to undertake such an analysis on Appellant's behalf.

Rather, Appellant simply asserts that SORNA is punitive and being retroactively applied. **Id.** at 14 (stating, "SORNA is being applied to [Appellant] retroactively. SORNA is punitive."). This unsupported assertion is unavailing, as retroactive application of SORNA did not, and could not, occur at the time of Appellant's 2009 conviction for failure to register.

We now consider whether the PCRA court correctly reviewed Appellant's challenges at CR-116-2009 under the PCRA. For the reasons that follow, we conclude that it did.

As we stated *supra*, Appellant asserted that jurisdiction over his claims was proper under **Lacombe** and that his submission was not subject to the strictures of the PCRA. Specifically, Appellant maintained in his *pro se* petition for *writ* of *habeas corpus* that his sentence at CR-116-2009 was illegal because Section 4915 was deemed unconstitutional by our Supreme Court in **Neiman**, **supra**, as affirmed by **Derhammer**, **supra**. Because his sentence at CR-116-2009 was illegal, Appellant contends the sentence imposed at CR-242-2015, which was set to run consecutively to the sentence Appellant received at CR-116-2009, should have commenced on July 22, 2016, the sentencing date at CR-242-2015, and that the time Appellant served as part of the sentence at CR-116-2009 should be credited towards his sentence at CR-242-2015. When his sentences are viewed in this light, Appellant asserts he fulfilled his period of incarceration imposed at CR-242-2015 and requests, through his petition for *writ* of *habeas corpus*, that he be released from incarceration. **See generally**, *Pro Se* Petition for *Writ* of *Habeas Corpus*, 12/20/21. To the extent that Appellant asserts *pro se* that his sentence imposed at CR-116-2009 was illegal and void *ab initio* pursuant to **Neiman**, **supra**, as affirmed by **Derhammer**, **supra**, we discern no error in the PCRA court's assessment of Appellant's petition as a PCRA petition and denying it as such.

Appellant's argument, and the underlying facts, closely align with the circumstances addressed by our Supreme Court in **McIntyre**, **supra**. In **McIntyre**, McIntyre was convicted of indecent assault in 2001, and upon his release from prison in 2003, he was required, as a sexual offender, to register with the Pennsylvania State Police for a period of 10 years. **McIntyre**, 232 A.3d at 611. In April 2012, McIntyre was convicted of violating Section 4915 based upon his failure to fulfill his mandatory registration requirements as a sexual offender. **Id.** As a result of his conviction of Section 4915, McIntyre was sentenced to 5 to 10 years' incarceration. **Id.** This Court affirmed Appellant's judgment of sentence on July 16, 2013, several months before our Supreme Court's decision in **Neiman**, **supra**. **See Commonwealth v. McIntyre**, 82 A.3d 1006, 2013 WL 6704859 (Pa. Super. filed Jul. 16, 2013) (unpublished memorandum).

McIntyre filed a **timely** PCRA petition, which the PCRA court subsequently dismissed. **McIntyre**, 232 A.3d at 612, 617 n.13. On appeal before this Court, McIntyre asserted for the first time that pursuant to our Supreme Court's decision in **Derhammer**, which affirmed **Neiman**, the Commonwealth lacked authority to prosecute him for violating Section 4915 after Megan's Law III, which included Section 4915, was struck down by our Supreme Court in **Neiman**. **Id.** at 612. This Court affirmed the order dismissing McIntyre's PCRA petition, finding **Derhammer** distinguishable because McIntyre's judgment of sentence became final before the decision in **Neiman** was handed down and McIntyre did not assert that **Neiman** applied

- 26 -

retroactively. *Id.*; *see also Commonwealth v. McIntyre*, 2018 WL 6598422, at *2 (Pa. Super. filed Dec. 17, 2018) (unpublished memorandum).

On discretionary appeal, our Supreme Court held that McIntyre's claim - that he was "entitled to relief because our [Supreme] Court's decision in *Neiman* . . . rendered Section 4915 void *ab initio*, and his conviction (and sentence) based thereon invalid - implicated the legality of his sentence and, as such, was a claim cognizable under the PCRA. *McIntyre*, 232 A.3d at 616-617. The *McIntyre* Court also noted that, "[i]nasmuch as [McIntyre's] claim that the trial court lacked authority to sentence him because the statute under which he was convicted was void *ab initio* is also[] a claim involving the legality of his sentence, [] it too is cognizable under the PCRA." *Id.* at 617 (stating that, "legality of sentence is always subject to review within the PCRA, **provided the PCRA time limits for filing a petition thereunder, or one of its exceptions, are satisfied**" (original quotation marks omitted; emphasis added)). Our Supreme Court, having found McIntrye's PCRA petition was **timely filed** (and that McIntyre remained eligible for collateral relief under the PCRA), reversed the order dismissing his petition and reversed McIntyre's judgment of sentence. *Id.* at 610-611. In doing so, the *McIntyre* Court, relying upon a well-established fundamental principle of our system of jurisprudence, stated,

> an unconstitutional law cannot serve as the foundation of a court's authority to try and imprison an individual, and, thus, criminal convictions and sentences based upon such unconstitutional laws

must not be permitted to stand. The [H]igh Court declared therein that an unconstitutional law is void, and is as no law. An offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment.

*Id.* at 618 (original brackets and quotation marks omitted), *citing **Ex Parte Siebold***, 100 U.S. 371, 376-377 (1879).

In the case *sub judice*, Appellant argues *pro se* that the trial court lacked authority to convict him and impose its sentence at CR-116-2009. He concludes, therefore, that his sentence is illegal. As stated, our Supreme Court has held that such a claim raises a challenge to the legality of Appellant's sentence, a claim cognizable under the PCRA. ***McIntyre***, 232 A.3d at 616-617; ***see also*** 42 Pa.C.S.A. § 9543(a)(2)(vii). As such, we discern no error of law or abuse of discretion in the treatment of Appellant's petition for *writ* of *habeas corpus* as an untimely PCRA petition. Also, because Appellant was not currently incarcerated as a result of his conviction at CR-116-2009, he was no longer eligible under the PCRA. ***See*** 42 Pa.C.S.A. § 9543(a)(1)(i) (stating that, to be eligible for relief under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that, *inter alia*, the petitioner is "currently serving a sentence of imprisonment, probation[,] or parole for the crime"). Because Appellant's filing was untimely, and since he was ineligible for relief at CR-116-2009, the PCRA court correctly denied his petition at CR-116-2009.

## CR-242-2015

At CR-242-2015, Appellant pled guilty to one count each of indecent assault – forcible compulsion and indecent assault – threat of forcible compulsion on October 29, 2015. Appellant's convictions stemmed from his sexual assault of his son between September 2006, and September 2007. As discussed *supra*, Appellant's aggregate sentence of 16 to 60 months' incarceration was set to run consecutively to the sentence he was serving at CR-116-2009. After sentencing Appellant on July 22, 2016, the trial court designated Appellant an SVP on August 4, 2016, and notified Appellant that pursuant to Section 9799.15(a)(6) of SORNA, he was subject to lifetime registration upon his release. Forgoing an appeal, Appellant's judgment of sentence at CR-242-2015 became final on August 22, 2016. Appellant filed *pro se* his petition for *writ* of *habeas corpus* on December 20, 2021.

At the core of Appellant's petition for *writ* of *habeas corpus*, as it pertains to CR-242-2015, is the assertion that because Section 4915(a)(1), for which he was convicted and sentenced at CR-116-2009, was found to be constitutionally infirm by our Supreme Court in **Neiman**, **supra**, his conviction at CR-116-2009 was a nullity. As such, the sentence imposed as a result of his conviction at CR-116-2009 was illegal. Because his sentence at CR-116-2009 was illegal, the aggregate sentence imposed at CR-242-2015, which was set to run consecutively to the sentence Appellant was then-serving at CR-116-2009, should have started to run on July 22, 2016, the commencement date of the CR-242-2015 sentence, and that the time Appellant served toward the sentence imposed at CR-116-2009 should be

credited towards his sentence at CR-242-2015. When the sentence imposed at CR-242-2015 is viewed in this light, Appellant asserts he fulfilled his term of incarceration imposed at CR-242-2015 and requests, through his petition for *writ* of *habeas corpus*, that he be released from incarceration. **See generally**, *Pro Se* Petition for *Writ* of *Habeas Corpus*, 12/20/21. In so arguing, Appellant contends the trial court failed to award him credit for time served prior to his sentencing at CR-242-2015.

It is well-established that "[a] challenge to [a] trial court's failure to award credit for time [served] prior to sentencing involves [a challenge to] the legality of sentence and is cognizable under the PCRA." **Commonwealth v. Fowler**, 930 A.2d 586, 595 (Pa. Super. 2007), *appeal denied*, 944 A.2d 756 (Pa. 2008). To reiterate, "[i]ssues that are cognizable under the PCRA must be raised in a timely PCRA petition and cannot be raised in a *habeas corpus* petition." **Taylor**, 65 A.3d at 466. As such, we discern no error of law or abuse of discretion in the PCRA court's treatment of Appellant's December 2021 filing as a petition filed pursuant to the PCRA.[33] Moreover, at a hearing

_____

[33] To the extent that Appellant relies upon our Supreme Court's decisions in **Lacombe**, **supra**, and **Santana**, **supra**, to challenge the lifetime registration requirements imposed for this sexual offense convictions at CR-242-2015, the registration requirements under SORNA II to which Appellant will be subjected upon his release from incarceration do not present an *ex post facto* concern because the SORNA II registration requirements to which Appellant will be obligated upon his release have been deemed non-punitive.

As discussed *supra*, as part of the sentence imposed at CR-242-2015 Appellant was designated an SVP and subjected to lifetime registration under

on Appellant's petition for *writ* of *habeas corpus*, Appellant conceded that any challenge to his sentence imposed at CR-242-2015 must be in the form of a petition filed pursuant to the PCRA.[34] N.T., 6/30/22, at 8.

---

SORNA. Appellant's sentence, at the time it was imposed in 2016, involved the retroactive application of SORNA's lifetime registration requirements because the underlying sexual assault of his son that led to his convictions at CR-242-2015 occurred in 2006, and 2007. Pursuant to **Santana** (as well as **Muniz**), as discussed *supra*, the retroactive application of SORNA's punitive lifetime registration requirements would have violated the *ex post facto* clauses of the United States Constitution and the Pennsylvania Constitution. Appellant did not, however, file his petition for *writ* of *habeas corpus* until December 20, 2021. By that time, SORNA II was enacted, which divided the sexual offender registration law (SORNA) into Subchapter H and Subchapter I. The provisions of Subchapter H apply to sexual offenses that were committed on or after December 20, 2012, and Subchapter I applies to sexual offenses that were committed after April 22, 1996, but before December 20, 2012. Thus, under SORNA II, Appellant is subject to Subchapter I's registration requirements upon his release from incarceration because the sexual assault of his son which led to his convictions at CR-242-2015 occurred in 2006, and 2007. In **Lacombe**, our Supreme Court deemed the registration provisions in Subchapter I to be non-punitive. **Lacombe**, 234 A.3d at 626. As such, their retroactive application does not present an *ex post facto* problem. **Id.** Thus, in the case *sub judice*, because Appellant is currently subjected, upon his release, to the lifetime registration requirements under Subchapter I of SORNA II, and those registration requirements are non-punitive, Appellant is not entitled to relief on the ground that the registration requirements imposed at CR-242-2015 violate the *ex post facto* clauses of the United States Constitution or the Pennsylvania Constitution.

[34] At the hearing, the following dialogue occurred:

| [PCRA Court:] | [A petition for *writ* of *habeas corpus*] would not be appliable to the [CR-242-2015] case. The only mechanism [] for [] an appeal at this time of [] those convictions and sentence[s] would be [*via* the PCRA]. |

As discussed *supra*, Appellant's judgment of sentence at CR-242-2015 became final on August 22, 2016. Therefore, Appellant had until August 22, 2017, in which to file a timely PCRA petition. Appellant filed the instant PCRA petition at CR-242-2015 on December 20, 2021, more than 4 years after the expiration of time to file a timely PCRA petition at CR-242-2015. As such, Appellant's PCRA petition is patently untimely.

If a PCRA petition is untimely filed, the jurisdictional time-bar can only be overcome if the petitioner alleges and proves one of the three statutory exceptions, as set forth in 42 Pa.C.S.A. § 9545(b)(1). ***Commonwealth v. Spotz***, 171 A.3d 675, 678 (Pa. 2017). The three narrow statutory exceptions to the one-year time-bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly[-]discovered facts; and (3) an after-recognized constitutional right." ***Commonwealth v. Brandon***, 51 A.3d 231, 233-234 (Pa. Super. 2012), *citing* 42 Pa.C.S.A. § 9545(b)(1)(i-iii). A petition invoking an exception to the jurisdictional time-bar must be filed

---

| [Appellant's Counsel:] | Right. |
| [Commonwealth:] | Agreed. |
| [PCRA Court:] | Okay. So[,] there is no argument that [the PCRA] court would dismiss the petition for *writ* of *habeas corpus* with respect to [CR-242-2015.] Correct? |
| [Appellant's Counsel:] | Correct. |

N.T., 6/30/22, at 8 (extraneous capitalization omitted).

within one year of the date that the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2) (effective Dec. 24, 2018). If a petitioner fails to invoke a valid exception to the PCRA time-bar, courts are without jurisdiction to review the petition and provide relief. **Spotz**, 171 A.3d at 676.

In Appellant's *pro se* PCRA petition (petition for *writ* of *habeas corpus*), his counseled amended petition, and his appellate brief, Appellant presents no claim, or argument, as to the applicability of one of the three exceptions to the jurisdictional time-bar. **See** Appellant's Brief at 8-14. Nonetheless, to the extent Appellant relies upon our Supreme Court's decision in **Neiman**, as affirmed by **Derhammer**, in support of his claim that the sentence imposed at CR-116-2009 is illegal, we consider whether this judicial decision provides an exception to the jurisdictional time-bar as it pertains to the sentence imposed at CR-242-2015.

It is well-established that a judicial decision, such as the decision rendered in **Neiman**, as affirmed by **Derhammer**, does not constitute a "fact" for purposes of the newly-discovered facts exception under Section 9545(b)(1)(ii). **Commonwealth v. Reid**, 235 A.3d 1124, 1147 (Pa. 2020) (stating, "subsequent decisional law does not amount to a new fact under Section 9545(b)(1)(ii) of the PCRA" (citation, original quotation marks, and brackets omitted). Consequently, our Supreme Court's decisions in **Neiman** and **Derhammer** do not provide Appellant an exception under Section 9545(b)(1)(ii).

In order to invoke the after-recognized constitutional right exception under Section 9545(b)(1)(iii), a petitioner must demonstrate that the right asserted is "a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time[-]period provided in this section and has been held by that court to apply retroactively." 42 Pa.C.S.A. § 9545(b)(1)(iii). Appellant does not cite a decision by the Supreme Court of the United States or our Supreme Court, nor has our research revealed such a case, in which *Neiman*, as affirmed by *Derhammer*, was held to be retroactively applied. *See Commonwealth v. Pollard*, 2023 WL 5447701, at *5 (Pa. Super. filed Aug. 23, 2023) (unpublished memorandum) (agreeing that, there are no decisions by the Supreme Court of the United States or our Supreme Court stating that the invalidating of Section 4915 as unconstitutionally enacted in *Neiman*, as affirmed by *Derhammer*, applies retroactively with regard to PCRA petitions); *see also Commonwealth v. Terrell*, 2019 WL 4862189, at *3 (Pa. Super. filed Oct. 1, 2019) (unpublished memorandum) (explaining that, *Neiman*, as affirmed by *Derhammer*, "did not result in a new constitutional right found to apply retroactively" (emphasis omitted)), *appeal denied*, 238 A.3d 333 (Pa. 2020); *Commonwealth v. Pollard*, 2019 WL 3764574, at *2 (Pa. Super. filed Aug. 9, 2019) (unpublished memorandum) (stating that, "no such holding has been issued [permitting a petitioner to rely on the decisions announced in *Neiman* and *Derhammer*] to meet the timeliness exception"

under Section 9545(b)(1)(iii)), *appeal denied*, 228 A.3d 256 (Pa. 2020).[35]

Therefore, Section 9545(b)(1)(iii) does not provide Appellant an exception to the jurisdictional time-bar as it pertains to the PCRA petition filed at CR-242-2015.

Based upon our review of the record, Appellant's PCRA petition filed at CR-242-2015 was untimely and without an exception. Therefore, we discern no error of law or abuse of discretion in the order dismissing Appellant's PCRA petition as the PCRA court lacked jurisdiction to address the merits of

_____

[35] We acknowledge that, while the decision in **McIntyre**, **supra** did not explicitly state that the decision in **Neiman**, as affirmed by **Derhammer**, was to be considered as applying retroactively for purposes of the PCRA timeliness exception under Section 9543(b)(1)(iii), the **McIntyre** Court did give the decision in **Neiman**, as affirmed by **Derhammer**, retroactive effect in that the **McIntrye** Court retroactively applied these decisions to invalidate McIntyre's conviction and sentence which became final before the announcement of either decision. However, there are other procedural requirements which further preclude the decision in **Neiman**, as affirmed by **Derhammer**, from serving as an exception the PCRA jurisdiction time-bar under Section 9543(b)(1)(iii). Foremost is that the decision in **Neiman**, as affirmed by **Derhammer**, neither announced a new substantive rule of constitutional law nor a new constitutional rule of criminal procedure considered to be a "watershed rule" implicating the fundamental fairness and accuracy of the criminal proceeding. **See McIntyre**, 232 A.3d at 614 n.9. Instead, as we discussed *supra*, the decision in **Neiman**, as affirmed by **Derhammer**, simply invalided Section 4915 on the ground that it was unconstitutionally enacted in violation of the single subject rule governing the enactment of legislation.

Nonetheless, even if **McIntrye** were read to announce the retroactive application of **Neiman**, as affirmed by **Derhammer**, for purposes of an exception to the PCRA jurisdictional time-bar under Section 9543(b)(1)(iii), Appellant failed to file his PCRA petition within one year of the announcement of the decision in **McIntyre**. **See** 42 Pa.C.S.A. § 9545(b)(2).

Appellant's claim, and we may not address it on appeal. ***See***

***Commonwealth v. Harris***, 114 A.3d 1, 6 (Pa. Super. 2015) (stating,

"[w]hen a PCRA court lacks jurisdiction to consider the merits of a petition,

we likewise lack jurisdiction to consider an appeal from disposition of the

petition").

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/6/2023