2021 PA Super 214

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
        :         PENNSYLVANIA
        Appellant  :
        :
      v.       :
        :
ANGEL LUIS MERCED     :   No. 1351 MDA 2020

Appeal from the Order Entered September 22, 2020,
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s):  CP-36-CR-0005625-2019.

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
        :         PENNSYLVANIA
        Appellant  :
        :
      v.       :
        :
ANGEL LUIS MERCED     :   No. 1352 MDA 2020

Appeal from the Order Entered September 22, 2020,
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s):  CP-36-CR-0000845-2020.

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

OPINION BY KUNSELMAN, J.:           **FILED OCTOBER 21, 2021**

## I.    Introduction

The Commonwealth appeals from the order granting partial, *habeas corpus* relief to Angel Luis Merced.  Before addressing the Commonwealth's argument, we first determine that we have jurisdiction over this *habeas corpus* appeal.  On the merits, the trial court erroneously excluded the arresting

_____

[*] Former Justice specially assigned to the Superior Court.

officer's hearsay evidence from its scope of review. As such, we partially vacate the appealed-from order and remand for reconsideration.

## II. Procedural Background

In 2019 and 2020, the Commonwealth charged Merced with various sexual offenses against his ex-girlfriend's four daughters, K.P., A.P., S.P., and N.P. The sisters were all under 13 years of age at the time of the alleged incidents.[1]

On June 19, 2019, the Commonwealth filed its first complaint (at Docket No. 5625-2019) regarding the allegations of K.P., A.P., and S.P. That October, the magisterial district court held a preliminary hearing, where the arresting officer provided hearsay testimony about the crimes. Under ***Commonwealth v. Ricker***, 120 A.3d 349 (Pa. Super. 2015), *overruled*, ***Commonwealth v. McClelland***, 233 A.3d 717 (Pa. 2020), the magisterial district court accepted the hearsay evidence, found a *prima facie* case, and bound the charges over to the trial court. Of particular relevance here, the arresting officer testified that K.P. and A.P. said Merced used his fingers to touch them between their labia. ***See*** N.T., 10/11/19, at 9-10.

On January 7, 2020, the Commonwealth filed a second complaint (at Docket No. 845-2020), based on the allegations of the fourth sister, N.P. At

---

[1] ***See*** 18 Pa.C.S.A. §§ 3123(a),(b) (involuntary deviate sexual intercourse with a child); 3125(a)(7) (indecent assault of a person less than 13 years of age); 3125(a)(8) (aggravated indecent assault); 3125(b) (aggravated indecent assault); 3126(a)(7),(8) (aggravated indecent assault); and 6301(a)(1)(ii) (corruption of minors).

that preliminary hearing, the magisterial district court again relied upon the officer's hearsay testimony to find that the Commonwealth established its *prima facie* case. According to the officer, N.P. recalled Merced's fingers "touching and rubbing her vagina over and under her clothes and penetrating her labia . . . ." N.T., 2/12/20, at 5-6.

Six months later, the Supreme Court of Pennsylvania overruled **Ricker** in **McClelland** (holding that due process prohibits the Commonwealth from relying solely upon hearsay evidence to establish its *prima facie* case). The next week, Merced petitioned for a Writ of *Habeas Corpus* in the trial court. He argued the Commonwealth had violated **McClelland** at his two preliminary hearings. At the *habeas corpus* hearing, the Commonwealth supplemented the preliminary-hearing record by offering direct testimony from all four sisters.

Although none could recall exact dates, each sister alleged that Merced repeatedly abused her while living with them and their mother in or around 2007. The Commonwealth charged Merced with aggravated indecent assault as to three of the sisters.[2] The Commonwealth summarized their testimony as follows:

> [N.P.] testified that she was "molested" by [Merced]. When asked for clarification, [she] testified that [Merced's] fingers "touched her vagina" underneath her clothing.

---

[2] At the *habeas* hearing, the Commonwealth informed the trial court that it did not charge Merced with aggravated indecent assault as to S.P. **See** N.T., 9/14/20, at 33.

> [N.P.] testified that this occurred at night in her bedroom and that [Merced] would reach his hand underneath her clothing. [N.P.] testified that [Merced] would also rub himself against her with clothes and "put his penis in [her] mouth."
>
> [K.P.] testified [Merced] would "go into [her] room at nighttime and put his hands in [her] pants and touch [her] vagina lips, just, like, stay there and play with it." [K.P.] stated that [Merced] would stand over her while she was in bed and reach his hand underneath her clothing.
>
> [A.P.] testified that [Merced] would "touch her private area." When asked for clarification, she stated her private area was her vagina, that [Merced] would use his fingers, and that this would be underneath her clothing. She further testified that the contact was skin to skin and that [Merced] would "rub it."

Commonwealth's Redacted Brief at 5-6 (citations to record omitted).

In the view of the trial court, this direct testimony established a *prima facie* case for some charges. However, the trial court opined that **McClelland** required direct testimony of digital penetration to establish a *prima facie* case for the crime of aggravated indecent assault. It therefore dismissed the seven counts for that offense but allowed lesser charges to proceed.

The Commonwealth appealed under Pennsylvania Rule of Appellate Procedure 311(d).[3] Upon reviewing the Commonwealth's brief, we discovered

---

[3] Pa.R.A.P. 311(d) provides, "In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."

no Statement of Jurisdiction[4] and questioned our appellate jurisdiction at oral argument. The Commonwealth responded that we have jurisdiction, because the trial court "made an error of law." Counsel for Merced agreed.

### III. Analysis

*A.* *Appellate Jurisdiction over Orders* **Granting** *Habeas Corpus* *Relief*

"Although neither party has specifically questioned the jurisdiction of this Court on this matter, the mere agreement of the parties will not vest jurisdiction where it otherwise should not be." ***Commonwealth v. Morganthaler***, 466 A.2d 1091, 1092 (Pa. Super. 1983). We may raise "the appealability of the trial court's ruling *sua sponte*." ***Id.***[5]

"Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review is plenary." ***Commonwealth v. Seiders***, 11 A.3d 495, 496–97 (Pa. Super. 2010).

To decide whether our jurisdiction is proper, we examine the history of *habeas corpus*. Originally, at common law, neither the jailer nor the petitioner could appeal from an order resolving a *habeas corpus* claim. In England, it was repeatedly said "that [an appeal] would not" lie from "a final order made

---

[4] "The brief of the appellant . . . shall consist of the following matter, separately and distinctly entitled and in the following order: (1) Statement of Jurisdiction." Pa.R.A.P. 2111(a)(1).

[5] We raise this issue, because another panel of this Court recently quashed a similar *habeas corpus* appeal in ***Commonwealth v. Hacker***, 1781 EDA 2020, 2021 WL 1235399 (Pa. Super. 2021) (unpublished decision), *reargument denied* (June 8, 2021), *appeal pending*, 400 MAL 2021 (Pa. 2021). As we discuss at note 7, ***infra***, that decision is unpersuasive.

on a *habeas corpus*." Hurd, 2 TREATISE ON THE RIGHT OF PERSONAL LIBERTY, AND ON THE WRIT OF *HABEAS CORPUS* AND THE PRACTICE CONNECTED WITH IT § I(1) at 568 (2d ed, 1876). Under the English approach, there was "no judgment pronounced in the case of a *habeas corpus*." **Id.** at 570.

In 1884, the Supreme Court of Pennsylvania rejected that procedure as applied to the jailer. In **Doyle v. Com. ex rel. Davis**, 107 Pa. 20, 25 (1884), the Court of Common Pleas of Allegheny County found Davis in contempt of court and issued an attachment for his arrest. Doyle, an Allegheny County deputy sheriff, executed the attachment in Warren County. The Warren County trial court promptly served Doyle with a Writ of *Habeas Corpus*, directing him to produce Davis' body. Doyle complied, and he answered the writ by offering the Allegheny County arrest attachment and underlying contempt decree. **See Doyle**, 107 Pa. at 24.

That documentation "fully exhibited the authority of [Doyle] to arrest [Davis] anywhere within the Commonwealth and take him before the Court of Common Pleas of Allegheny County; but, notwithstanding this uncontradicted return, Davis was unconditionally discharged." **Id.** Doyle appealed. Citing Hurd, 2 *HABEAS CORPUS*, **supra**, Davis moved to quash the appeal under the common law that a *habeas corpus* order is neither final nor appealable.

The Supreme Court of Pennsylvania was "of a different opinion." **Id.** at 26. An "order discharging [an individual] from custody is essentially final, and the officer in whose custody he was, has no redress except by removal of the proceedings to this court for revision." **Id.** The Court opined that the broad,

appellate powers conferred in the Judicial Act of 1836 supplanted the appellate practice of common law. Thus, the **granting** of *habeas corpus* relief became a final, appealable order under the 1836 statute.

The Judicial Act of 1836 was a forerunner of Title 42, the Judicial Code. In our current Judicial Code, the General Assembly divided the 19th-century, appellate jurisdiction of the Supreme Court among the three appellate courts of Pennsylvania. The broad, direct, appellate powers first identified in **Doyle** passed to the Superior Court in 1895, when it became Pennsylvania's intermediate appellate court and, thereafter, the legislature conferred upon it direct, appellate jurisdiction over *habeas corpus* appeals.[6]

It is now black-letter law that, "The rule limiting the Commonwealth's right of appeal in criminal cases does not apply to the Commonwealth's right to appeal in a *habeas corpus* proceeding, because *habeas corpus* is **a civil rather than a criminal proceeding**." 18 STANDARD PA. PRACTICE 2d § 98:95 at 311 (emphasis added). Pretrial, if "a court discharges the accused on a *habeas corpus* petition which raises the issue of whether there was probable cause for holding the accused for trial [*i.e.*, whether there is a *prima facie*

---

[6] Title 42 does not authorize direct appeals to the Supreme Court on *habeas corpus* matters. It also expressly strips the Commonwealth Court of appellate jurisdiction over that class of appeals. "[T]he Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases: (1) Commonwealth civil cases. -- All civil actions or proceedings . . . except actions or proceedings in the nature of applications for a writ of *habeas corpus* . . . ." 42 Pa. C.S.A. § 762(a)(1)(i). Hence, such matters are within the direct, appellate jurisdiction of the Superior Court. **See** 42 Pa.C.S.A. § 742.

case], the court's order is final and appealable." 18 STANDARD PA. PRACTICE 2d § 98:96 at 313 (citing *Commonwealth ex rel. Stingel v. Hess*, 36 A.2d 848 (Pa. Super. 1944)).

The Supreme Court has said, "In considering whether [an] appellant may immediately appeal the [order regarding] *habeas corpus* relief, it must be remembered that the rules of appealability are not reciprocal in this area." *Commonwealth v. Hess*, 414 A.2d 1043, 1047 (Pa. 1980). The "Commonwealth may appeal from an order discharging a defendant upon a Writ of *Habeas Corpus*, *Commonwealth ex rel. Bryant v. Hendrick*, 444 Pa. 83, 280 A.2d 110 (Pa. 1971); *Doyle*, [*supra*]." *Id.* However, "it is equally well-settled that the defendant may not immediately appeal from the denial of his pretrial application for *habeas corpus* relief." *Id.* (citations omitted).

Today, it is "well established that the Commonwealth may appeal from a trial court's order dismissing a felony charge based on a pretrial petition for Writ of *Habeas Corpus*." *Commonwealth v. Karetny*, 880 A.2d 505, 513 (Pa. 2005) (citation omitted). Our jurisdiction over the appealed-from order "is secure." *Id.*[7] *See also, Commonwealth v. Hetherington*, 331 A.2d

---

[7] We respectfully disagree with the quashal of a procedurally similar appeal in *Commonwealth v. Hacker*, 1781 EDA 2020, 2021 WL 1235399 (Pa. Super. 2021) (unpublished decision), *reargument denied* (June 8, 2021), *appeal pending*, 400 MAL 2021 (Pa. 2021). We first note that we are not bound by non-precedential decisions of this Court. *See* Superior Court I.O.P. 65.37(B).

*(Footnote Continued Next Page)*

205, 208-09 (Pa. 1975) (distinguishing two lines of precedent: 1) cases where a *magistrate* dismisses charges at a preliminary hearing, noting such a decision is not a final determination, because it temporarily discharges the accused, leaving him subject to rearrest, and therefore is not appealable; and 2) cases where a trial court grants a petition for Writ of *Habeas Corpus*,[8] noting such a decision is final, because it discharges the petitioner completely, leaving the Commonwealth no redress, and therefore "is a proper subject for appellate review").

B.      *Scope of Review at Pretrial,* Habeas Corpus *Hearings*

Having determined our jurisdiction is proper, we turn to the merits of the issue the Commonwealth raises on appeal.  It asks, "Did the trial court err in dismissing [the seven counts of aggravated indecent assault,] where the

_____

In quashing the Commonwealth's appeal, *Hacker* principally relied on a footnote from the Supreme Court's recent decision in *Commonwealth v. McClelland*, 233 A.3d 717, 732 n.8 (Pa. 2020), which stated, "An order denying or granting a Writ of *Habeas Corpus* is interlocutory."  Critically, the *McClelland* Court only granted *allocatur* to the due process implications of allowing the Commonwealth to rely exclusively upon hearsay in making its *prima facie* case, not the appealability of *habeas corpus* orders.  Because the issue of whether the Commonwealth could appeal from an order granting *habeas corpus* relief was not at issue in *McClelland*, the reference to orders *granting* habeas corpus relief as interlocutory was *dicta*.  *See e.g., In re L.J.*, 79 A.3d 1073, 1081 (Pa. 2013)*.*  Thus, on this issue, the eighth footnote of *McClelland* is not binding, and we decline to follow it as persuasive.

[8] The petitioner in *Hetherington* incorrectly called his application for relief a "motion to quash."  *Commonwealth v. Hetherington*, 331 A2d 205, 209 (Pa. 1975).  Nonetheless, the court noted that the established and accepted method for testing the finding of a *prima facie* case pre-trial has been by Writ of *Habeas Corpus*, and the court treated his motion as such.  *Id.*

Commonwealth presented sufficient evidence to establish a *prima facie* case of Aggravated Indecent Assault?"  Commonwealth's Redacted Brief at 2 (emphasis omitted).  The Commonwealth argues that the trial court erred on two grounds.

First, it makes a procedural argument.  The Commonwealth believes the trial court overextended **McClelland** by refusing to consider any hearsay evidence pretrial.  Thus, it asserts that both the hearsay testimony of the arresting officer and the direct testimony of the three sisters were within the trial court's scope of review when deciding whether the Commonwealth made *prima facie* cases for aggravated indecent assault.

Second, the Commonwealth asserts, if the trial court rightly rejected the hearsay testimony, the sisters' testimony established all of the elements for that crime.  In the Commonwealth's view, their direct testimony warrants a person of reasonable caution to believe that Merced's fingers penetrated their labia.

Merced agrees with the Commonwealth that, "Entrance in the labia is sufficient for penetration as required by [18 Pa.C.S.A. § 3125[9]]; there need

---

[9] The General Assembly of Pennsylvania has defined the crime at issue as follows:

> a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic, or law-enforcement procedures commits aggravated indecent assault if:

*(Footnote Continued Next Page)*

- 10 -

not be penetration of the vagina." Merced's Brief at 14-15 (citing

***Commonwealth v. Hunzer***, 868 A.2d 498, 505-06 (Pa. Super. 2005)).

However, he argues, "Because there was no evidence which would have been

---

(1) the person does so without the complainant's consent;

(2) the person does so by forcible compulsion;

(3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

(4) the complainant is unconscious or the person knows that the complainant is unaware that the penetration is occurring;

(5) the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance;

(6) the complainant suffers from a mental disability which renders him or her incapable of consent;

(7) the complainant is less than 13 years of age; or

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

**(b) Aggravated indecent assault of a child. --** A person commits aggravated indecent assault of a child when the person violates subsection (a)(1), (2), (3), (4), (5) or (6) and the complainant is less than 13 years of age.

18 Pa.C.S.A. § 3125.

- 11 -

admissible **at trial** to satisfy the element of penetration required for aggravated indecent assault, the trial court properly dismissed all seven charges of aggravated indecent assault." Merced's Brief at 11 (emphasis added). "The sole evidence of penetration came from the inadmissible **(at trial)** hearsay testimony of Detective Higgins." **Id.** at 15 (emphasis added). According to Merced, because the officer's "hearsay testimony is the only testimony regarding penetration, and her testimony would be inadmissible **at trial**, the Commonwealth did not present sufficient evidence of all elements of aggravated indecent assault[.]" Id. at 16 (emphasis added).

Merced's repeated insistence that the officer's hearsay testimony is not admissible **at trial** demonstrates the flaw in his logic. A hearsay objection may keep the officer from testifying as to the sisters' out-of-court statements at trial, or it may not, if an exception applies. But this distinction is irrelevant at the pretrial stage. Notably, Merced fails to counter the theory that **McClelland** permits the Commonwealth to use **some** hearsay evidence to establish a *prima facie* case and that the trial court, therefore, improperly curtailed its scope of review.

Whether the trial court employed the correct scope of review for the petition for Writ of *Habeas Corpus* is a pure question of law. "Ordinarily, an appellate court will review a grant or denial of a petition for Writ of *Habeas Corpus* for abuse of discretion, but for questions of law, our standard of review is *de novo*, and our scope of review is plenary." **McClelland**, 233 A.3d at 732.

The **McClelland** Court stated the issue before it as follows: "whether, as the Superior Court held in [**Ricker**, **supra**, Pa.R.Crim.P. 542(E)] permits **all** elements of **all** offenses to be established at a preliminary hearing solely on the basis of hearsay evidence." **Id.** at 734 (emphasis in original). Thus, **McClelland** did not consider – much less decide – that a *prima facie* case may not partially rest upon hearsay evidence.

Rule of Criminal Procedure 542 expressly permits the Commonwealth to introduce hearsay evidence to make a *prima facie* case. "Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established. Hearsay evidence **shall be sufficient to establish <u>any</u> element of an offense**[.]" Pa.R.Crim.P. 542(E) (emphasis added). After an extensive discussion on its promulgation of and amendments to Rule 542(E), the Supreme Court held that "subsection (E) is intended to allow **some use** of hearsay." **McClelland** 233 A.3d at 735 (emphasis added). Here, the Commonwealth relied upon that Rule when it supplemented the record from the preliminary hearing to defend against Merced's petition for Writ of *Habeas Corpus*.[10] The Commonwealth called the four sisters to provide firsthand accounts of their alleged molestations.

---

[10] **See Commonwealth v. Morman**, 541 A.2d 356, 360 (Pa. Super. 1988) (holding that the scope of the evidence which a trial court may consider in determining whether to grant a pretrial Writ of *Habeas Corpus* based upon the Commonwealth's alleged failure to establish a *prima facie* case is not limited to the evidence presented at the preliminary hearing; the Commonwealth may present additional evidence at the *habeas corpus* stage in its effort to establish a *prima facie* case).

The only element of aggravated indecent assault the trial court found lacking from the testimony of three of the girls was "penetration, however slight" 18 Pa.C.S.A. § 3125. The trial court believed the Commonwealth expected it "to disregard the sworn testimony of the [three sisters] in favor of the detective's preliminary hearing testimony of what [they] said during their interviews." Trial Court Opinion, 11/5/20, at unnumbered 3. "To do so, the [c]ourt would have to ignore the holding of **McClelland** which states fundamental due process requires that no adjudication be based solely on hearsay evidence." **Id.**

This grudging interpretation of **McClelland** contradicts Pa.R.Crim.P. 542(E). It prohibits the Commonwealth from relying on **any** hearsay evidence to prove any element in establishing a *prima facie* case. **McClelland** does not command such a result.

Thus, the trial court erroneously rejected the hearsay evidence of the officer. That hearsay was within the trial court's scope of review, regardless of whether it might be inadmissible at trial, and even if the trial court found it less credible than (or even contrary to) the direct testimony of the three sisters. Under **McClelland**'s interpretation of Pa.R.Crim.P. 542(E), the choice for the trial court was not either the direct testimony of the three sisters or the hearsay testimony of the officer. At the pretrial stage, the court should have relied upon **both** types of evidence; applied them together; and viewed them in the light most favorable to the Commonwealth, rather than viewing the testimony of the sisters as displacing or contradicting that of the officer.

- 14 -

By failing to do this, the trial court employed an artificially narrow scope of review.  Hence, it erred as a matter of law.

## IV.   Conclusion

In sum, this Court has appellate, subject-matter jurisdiction over orders granting *habeas corpus* relief.  Such orders are final, civil judgments against the Commonwealth.

On the merits, a trial court's scope of review for a petition for Writ of *Habeas Corpus* is plenary.  Here, the trial court erroneously limited its review to the direct testimony of the three sisters.  Therefore, we vacate (in part), remand, and direct the court to consider and to presume as true the hearsay testimony of the officer to decide whether the Commonwealth made a *prima facie* case on the aggravated-indecent-assault element of penetration, as well as the testimony of the three sisters for the crime's other elements.  After reconsidering the totality of the record, the trial court shall issue a new ruling on the petition for Writ of *Habeas Corpus* in the first instance.[11]

Order vacated to the extent that it grants *habeas corpus* relief.  Case remanded with instructions.

Jurisdiction relinquished.

---

[11] We decline to address the Commonwealth's alternative argument that, even standing alone, the three sisters' testimony established a *prima facie* case for aggravated indecent assault.  By vacating and remanding with instructions, this Court has rendered that alternative argument moot for purposes of the instant appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2021