J-A01023-26

2026 PA Super 92

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
    :    PENNSYLVANIA
    :
v.    :
    :
    :
    :
ALIQUAN ULYSSE    :
    :
Appellant    :    No. 3345 EDA 2024

Appeal from the Judgment of Sentence Entered November 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006346-2021

BEFORE:  DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

OPINION BY KUNSELMAN, J.:    **FILED MAY 5, 2026**

Aliquan Ulysse appeals from the judgment of sentence of five years' probation that the Philadelphia County Court of Common Pleas entered after he pleaded guilty to one misdemeanor count of indecent assault.  **See** 18 Pa.C.S.A. § 3126(a)(2).  As part of his plea, Ulysse reserved the right to appeal the jurisdiction and due process issues he previously raised in his interlocutory appeal docketed at 1634 EDA 2021,[1] which this Court quashed.  **See Commonwealth v. A.U.**, 301 A.3d 897 (Pa. Super. 2023) (non-precedential decision), *appeal denied*, 313 A.3d 449 (Pa. 2024).  Here, we must determine whether a case that began in juvenile court when the juvenile was nearly twenty-one, but did not reach the merits, may continue in adult criminal court when the Commonwealth refiled charges there, after the

_____

[1] Ulysse's plea agreement and the trial court's judgment of sentence refer to his prior appeal as 1624 EDA 2021.  However, his appeal was docketed at 1634 EDA 2021.

juvenile turned twenty-one. After careful review, we determine that the case could continue in adult court, and, therefore, we affirm.

In Ulysse's prior interlocutory appeal, this Court provided the following factual and procedural history:

> The charges in this case arise from accusations made by [Z.S.] ("Complainant") in June 2020. Complainant accused Ulysse of committing serious sexual offenses against Complainant on several days in 2014 or 2015, when Complainant was approximately 7 years old and Ulysse was approximately 15 years old.
>
> On July 29, 2020, when Ulysse was approximately one month shy of his 21st birthday, the Commonwealth filed a delinquency petition in the Family Court Division of the Court of Common Pleas ("Juvenile Court") charging Ulysse, *inter alia*, with Rape, Involuntary Deviate Sexual Intercourse, and Incest. The Commonwealth filed a request to certify the case to the Criminal Division to prosecute Ulysse as an adult.
>
> On August 19, 2020, at the conclusion of a certification hearing, the Juvenile Court found that the Commonwealth had failed to establish a *prima facie* case and dismissed the charges. The court opined, that it "didn't have to get to [the] certification [issue] because [the Commonwealth] didn't get past the preliminary hearing." [The court told the Commonwealth that it had "lost a preliminary hearing," that it could not "appeal this," and that this case was "over."]
>
> The Commonwealth did not appeal. Instead, it refiled the charges in the Criminal Division on December 3, 2020, [] three months after Ulysse's 21st birthday.
>
> On April 28, 2021, Ulysse filed a motion to dismiss the charges. Ulysse argued that the Commonwealth could not "circumvent [the Juvenile Court's] ruling by simply waiting" until Ulysse turned 21 to refile the charges, rather than filing an appeal from the Juvenile Court's order. On July 13,

> 2021, the [criminal] court denied Ulysse's motion to dismiss.

*Id.* at *1 (footnotes omitted; Ulysse's name added).

Ulysse appealed the order denying his motion to dismiss.[2] Although interlocutory, he argued that the order was a collateral order appealable as of right pursuant to Appellate Rule 313. This Court found that the order did not satisfy Rule 313(b)'s requirements. Specifically, we concluded Ulysse's claims would not be irreparably lost if review was delayed until after final judgment.[3] Thus, this Court quashed his appeal, and the Supreme Court denied his petition for allowance of appeal.

Thereafter, the matter proceeded in the Criminal Division. Ulysse entered a negotiated guilty plea for one misdemeanor count of indecent assault, and the Commonwealth agreed to drop the other charges. *See Guilty Plea Colloquy*, 11/26/24. As noted above, part of the plea deal allowed Ulysse to appeal issues raised in his interlocutory appeal.

After his judgment of sentence was entered, Ulysse timely filed this appeal. He presents the following two issues for our review:

_____

[2] We do not have the benefit of the trial court's reasoning for denying Ulysse's motion to dismiss because the sitting judge retired, and no trial court opinion related to that decision was filed. *See* Trial Court Opinion, 2/10/25, at 2. The record does not reflect the judge's reasoning. *See id.*

[3] In the first appeal, we also expressed doubt that Ulysse was subject to the Juvenile Court's jurisdiction due to his age. *See A.U.*, 301 A.3d at *3 ("Thus, it is doubtful that the Juvenile Court has jurisdiction over this case or that [Ulysse] has any right to the protections that the Juvenile Act provides to juveniles.").

1. Did the Criminal Division of the Court of Common Pleas lack jurisdiction over Ulysse's case in violation of the Juvenile Act where the juvenile court denied the Commonwealth's petition to certify a child's delinquency petition to adult criminal court and instead of appealing the denial of certification, the Commonwealth ignored the order, waited until Ulysse was 21, and filed an adult criminal complaint on the same charges?

2. Did not the Commonwealth, in pursuing charges against Ulysse in the Criminal Division of the Court of Common Pleas after certification of Ulysse's delinquency petition was denied, violate Ulysse's substantive and procedural due process rights, as established by the Juvenile Act and appellate process?

Ulysse's Brief at 2-3 (explanatory comments omitted; Ulysse's name added).

Ulysse asserts that his first issue raises a question of jurisdiction. "Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review is plenary." ***Commonwealth v. Merced***, 265 A.3d 786, 789 (Pa. Super. 2021) (citation omitted). To the extent we must engage in statutory interpretation or answer other questions of law, our standard of review remains *de novo* and our scope is plenary. ***See Commonwealth v. Watts***, 283 A.3d 1252, 1255 (Pa. Super. 2022) (citations omitted); ***Commonwealth v. Taylor***, 120 A.3d 1017, 1021 (Pa. Super. 2015) (citation omitted).

On appeal, Ulysse argues that the Criminal Division lacked jurisdiction over his case, because he was twenty years old when he was initially charged with crimes he allegedly committed as a minor. ***See*** Ulysse's Brief at 17. He claims he was properly subject to the provisions of the Juvenile Act. ***See id.*** Further, the juvenile court denied the Commonwealth's request to transfer his

case to the criminal division. Thus, he claims the decision of whether to prosecute him as an adult was exclusively within the Juvenile Court's jurisdiction, and the Commonwealth could not disregard that court's decision by withdrawing the juvenile charges and later prosecuting him for the same charges in the Criminal Division after he turned twenty-one. *See id.* at 20.

Ulysse's argument fails because our Supreme Court has already determined that once a defendant turns twenty-one, a juvenile court loses jurisdiction over the defendant.

The situation presented here—where a defendant is prosecuted some time after the offenses occurred—often happens in sexual assault cases, where a victim may not disclose the crime until several, or sometimes many, years later. *See Commonwealth v. Armolt*, 294 A.3d 364, 365 (Pa. 2023) (noting that the events leading to the defendant's November 2018 arrest occurred approximately three decades prior); *Commonwealth v. Renninger*, 269 A.3d 548, 553 (Pa. Super. 2022) (explaining that the defendant was charged in October 2017 with sexual offenses that occurred from approximately 1997 to 2001). Although a defendant was a minor at the time the offense occurred, the defendant may be an adult at the time of disclosure.

In *Commonwealth v. Armolt*, our Supreme Court addressed the issue of jurisdiction in a case like this. The High Court answered the question of whether an adult criminal court has jurisdiction to convict and sentence an adult for crimes committed as a juvenile. *Armolt*, 294 A.3d at 365.

Armolt committed hundreds of sexual offenses against a child, C.L., from the late 1980s until the early 1990s, when Armolt was ten to seventeen years old. *Id.* at 366. In 2016, C.L., then an adult, called the Pennsylvania State Police to discuss a dispute she was having with Armolt and his brother over property inheritance. *Id.* During this conversation, C.L. disclosed the abuse. *Id.* A state trooper investigated C.L.'s allegations, and the Commonwealth arrested Armolt in November 2018, charging him with various sexual offenses. *Id.* At trial, Armolt was forty-two years old. *See id.* at 368. He was convicted of various sexual offenses and sentenced to four to eight years' imprisonment. *Id.* at 367.

Armolt appealed to the Superior Court, arguing that the trial court erred by retaining jurisdiction and sentencing him as an adult for crimes he committed as a juvenile. *Id.* Armolt also raised claims related to equal protection, due process, and cruel and unusual punishment. *Id.* The Superior Court affirmed the trial court, agreeing that the Juvenile Act did not apply to offenders over the age of twenty-one. *Id.* at 368. Armolt appealed to the Supreme Court. *Id.* at 369.

The Supreme Court explained that the Juvenile Act conveyed limited jurisdiction to juvenile courts for proceedings in which a child is alleged to be delinquent or dependent. *Id.* at 372 (citation omitted). The Act defines a "child" as an individual who is: 1) under eighteen years old or 2) under twenty-one years old who committed a delinquent act before reaching eighteen years old. *Id.* (citing 42 Pa.C.S. § 6302) (footnote omitted). Thus, a juvenile court

- 6 -

has jurisdiction over any offender under the age of eighteen who committed a delinquent act. A juvenile court retains jurisdiction over offenders, who committed an offense while under the age of eighteen, only if they are prosecuted before turning twenty-one. *Id.* Conversely, an adult criminal court possesses jurisdiction over any offender who is over twenty-one, even for crimes the offender committed as a juvenile. *See id.* at 372-74. Thus, the adult criminal court had jurisdiction over the forty-two-year-old Armolt, for the crimes he committed as a juvenile.

The High Court elaborated that if it were to adopt Armolt's position that the adult criminal court lacked jurisdiction over him because he committed his crimes while under eighteen years old, then no court would have jurisdiction to try and sentence him. *Id.* at 372-73 (citation omitted). Practically then, all juvenile offenders who escape prosecution until they are over twenty-one could not be held accountable in *any* court. *Id.* at 373. Thus, these offenders would be relieved of all consequences of their criminal acts if not prosecuted before they turn twenty-one. *Id.* The Supreme Court did not believe the General Assembly intended such a sweeping and drastic result. *Id.* (citation omitted). Because Armolt was not charged until he was in his forties, he was not subject to the Juvenile Act and was properly tried and sentenced in adult criminal court. *Id.* at 374. The Court also found that Armolt had waived his constitutional claims. *Id.* at 378-80.

Here, to the extent Ulysse argues that the Juvenile Court retained jurisdiction over him after he turned twenty-one simply because his case

began in Juvenile Court while he was twenty years old, we reject that argument. Although the Juvenile Court had jurisdiction when this case began because Ulysse was twenty, it lost jurisdiction when he turned twenty-one, and it no longer had the authority to adjudicate him at that point. **See Armolt, supra**. However, the criminal court had jurisdiction over him after he turned twenty-one.

This Court has stated that "absent proof of an improper motivation for a delay in prosecution, a defendant who committed a crime as a child, but was not charged until after" turning twenty-one, "can be tried as an adult in the criminal court and cannot benefit from the protections afforded by the Juvenile Act." **Renninger**, 269 A.3d at 562 (citation omitted). **But see Armolt**, 294 A.3d at 374 n.13 (noting that the Superior Court case, **Commonwealth v. Monaco**, 869 A.2d 1026 (Pa. Super. 2005), which discussed the "bad faith" exception did not elaborate on the legal basis underlying the exception; the Supreme Court did not express an opinion on **Monaco's** viability because that issue was not before the Court.); **id.** at 383-86 (Wecht, J., concurring) (explaining that "the legal basis for the 'improper motive' exception is unclear" and that the legal foundation for such a rule should be examined in an appropriate case). Notably, Ulysse does not claim any improper motive on the part of the Commonwealth, *i.e.*, that they intentionally delayed his prosecution until after he turned twenty-one.

Ulysse relies on the Supreme Court's decision in **Commonwealth v. Taylor**, 309 A.3d 754 (Pa. 2024), to support his position that the adult

criminal court lacked jurisdiction to proceed in this matter. Ulysse claims that, "due to the fatal flaw of the transfer decision, the adult criminal court never had jurisdiction to adjudicate" him. Ulysse's Brief at 25. Because there was a Juvenile Court order denying certification, the Criminal Division should not have "seized jurisdiction" in defiance of that order. *Id.*

However, the *Taylor* cases involved very serious infractions by the trial court during Taylors' juvenile court proceedings which are not present in this case. In *Taylor*, the Commonwealth filed a delinquency petition alleging that the then seventeen-year-old Taylor was delinquent of various felony sexual offenses. *Taylor*, 309 A.3d at 761. The Commonwealth petitioned to have the juvenile court transfer the case to adult criminal court. *Id.* The juvenile court conducted a certification hearing. *Id.* At the end of the hearing, the juvenile court determined that Taylor was not amenable to treatment in the juvenile system, mainly because he refused to admit guilt for the alleged offenses. *Id.* at 762. Thus, the court granted the transfer petition and certified the case to the criminal division. *Id.*

Taylor appealed to the Superior Court, which affirmed the juvenile court. *Id.* at 763. The Supreme Court reversed, holding that the juvenile court violated Taylor's Fifth Amendment right to be free from compulsory self-incrimination when it considered his refusal to admit guilt as a basis to grant certification to adult court. *Id.* The Supreme Court remanded the case to the Superior Court for us to determine if the juvenile court's error was structural or harmless and what relief was available. *See id.* at 763-64.

On remand, the Superior Court determined that the juvenile court's error was structural and discharged Taylor. *Id.* at 765-68. The Commonwealth appealed to the Supreme Court. *Id.* at 768. The Supreme Court agreed that the juvenile court's violation of Taylor's Fifth Amendment right constituted structural error in the court's certification hearing. *Id.* at 783, 785. Thus, the juvenile court's certification order was void, and the criminal court acted without authority to try Taylor as an adult. *Id.* at 789. If Taylor was still a juvenile, he would have been entitled to a new certification hearing in the juvenile court. *Id.* at 790. However, by that time, Taylor was twenty-seven years old and was no longer subject to the juvenile court's jurisdiction, so that court could not conduct a new certification hearing. *See id.* at 791. Further, the criminal division did not have statutory authority to conduct a certification hearing. *Id.* at 792. Therefore, the only appropriate remedy was to dismiss the case and discharge Taylor. *Id.* at 793.

Here, although Taylor's and Ulysse's cases both began when they were juveniles, there was no juvenile court error that infringed on Ulysse's rights and rendered the certification, or lack thereof, void. Instead, the Juvenile Court merely determined that the Commonwealth failed to make out a *prima facie* case during the certification hearing. Thus, the Criminal Division did not receive this case based on a flawed transfer decision, nor did it improperly "seize jurisdiction." It received the case when the Commonwealth filed new charges against Ulysse in the Criminal Division after he turned twenty-one,

and it tried the then-adult Ulysse on the refiled charges against him. Therefore, *Taylor* is inapposite here.

Unlike *Taylor*, the Juvenile Court's certification process here was entirely appropriate. If a delinquency case is initiated in juvenile court, the Juvenile Act allows the Commonwealth to transfer the case to the adult criminal division, in certain circumstances:

> **(a) General rule.--**After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense under the laws, including local ordinances, of this Commonwealth, the court before hearing the petition on its merits may rule that this chapter is not applicable and that the offense should be prosecuted, and transfer the offense, where appropriate, to the division or a judge of the court assigned to conduct criminal proceedings, for prosecution of the offense if all of the following exist:
>
> (1) The child was 14 or more years of age at the time of the alleged conduct.
>
> (2) A hearing on whether the transfer should be made is held in conformity with this chapter.
>
> (3) Notice in writing of the time, place, and purpose of the hearing is given to the child and his parents, guardian, or other custodian at least three days before the hearing.
>
> (4) The court finds:
>
> > (i) that there is a prima facie case that the child committed the delinquent act alleged;
> >
> > (ii) that the delinquent act would be considered a felony if committed by an adult;
> >
> > (iii) that there are reasonable grounds to believe that the public interest is served by the transfer of the case for criminal prosecution. [. . .]

(iv) that there are reasonable grounds to believe that the child is not committable to an institution for the mentally retarded or mentally ill.

42 Pa.C.S.A. § 6355(a).

The above process for transferring a case from juvenile to criminal court is called a certification hearing.[4] Our Supreme Court has explained the purpose of such hearings gives the juvenile judge the discretion to try a juvenile as an adult under certain circumstances:

> [T]he sole purpose of a certification hearing, as established by the Juvenile Act, is to determine if there is a *prima facie* case that the child committed the delinquent act alleged, the delinquent act would be considered a felony if committed by an adult, and if there are reasonable grounds to believe that the public interest would be served by the transfer of the case for criminal prosecution.

*Taylor*, 309 A.3d at 778 (citation and internal quotation marks omitted).

Notably, the statute provides that the "decision of the court to transfer or not to transfer the case shall be interlocutory." 42 Pa.C.S.A. § 6355(f). Nevertheless, Pennsylvania Rule of Appellate Procedure 311 allows the Commonwealth to appeal from certain interlocutory orders. The Rule provides, in relevant part:

---

[4] The reverse transfer process also exists. 42 Pa.C.S.A. § 6322. A juvenile, who is initially charged as an adult with murder or any of the offenses excluded from the definition of a "delinquent act" under section 6302 of the Juvenile Act, may seek to transfer the case to juvenile court. This process is called a decertification hearing. For all other offenses, a case initiated in adult court is automatically transferred to juvenile court if the offender is a minor. *Id.*

- 12 -

> **(d) Commonwealth Appeals in Criminal Cases.** In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d).

Accordingly, although interlocutory, the Commonwealth may immediately appeal transfer orders as of right due to double jeopardy implications. *See Commonwealth v. Johnson*, 669 A.2d 315, 323 (Pa. 1995) (holding that "an appeal of an order transferring a case from the criminal division to the juvenile division" is immediately appealable as of right); *In Interest of McCord*, 664 A.2d 1046, 1048-49 (Pa. Super. 1995) (holding that "an order, which denies transfer of the juvenile defendant's case to criminal court, is an interlocutory order which is immediately appealable." Also noting that "an appeal by the juvenile from the transfer order must be treated differently than an appeal by the Commonwealth.").

On appeal, Ulysse argues that the Commonwealth's only recourse after the Juvenile Court denied the transfer of his case was to appeal the Juvenile Court's order. *See* Ulysse's Brief at 20. He maintains that permitting the Commonwealth to simply wait out the Juvenile Court's jurisdiction rather than filing an appeal from an adverse transfer order would lead to abuse of the system and of a defendant's rights. *Id.* at 22. In the future, the Commonwealth could simply ignore a juvenile court's ruling regarding transfer with impunity and wait until the juvenile defendant turned twenty-one before

refiling the same charges in criminal court.  *Id.*  Ulysse contends that because the Criminal Division never had the authority to adjudicate him delinquent, and because he is no longer within the Juvenile Court's jurisdiction, the only remedy is discharge.  *Id.* at 25.

Conversely, the Commonwealth argues that when the Juvenile Court denied transfer here, it found the Commonwealth failed to state a *prima facie* case.  Under these circumstances, the Commonwealth argues that its only recourse then was to refile the charges and present them to another judge; it could not have taken an immediate appeal.  Commonwealth's Brief at 10. The Commonwealth contends that Ulysse conflates two distinct possible findings at a certification hearing: 1) a dismissal based on a failure to show a *prima facie* case, which is not immediately appealable as a collateral order, and 2) a discretionary decision denying transfer to criminal court for the purpose of proceeding with the case in juvenile court, which is immediately appealable.  *See id.* at 10-11.  As the Commonwealth points out, the latter is immediately appealable because the commencement of a proceeding in juvenile court implicates double jeopardy.  *See id.* at 12.

According to the Commonwealth, if it fails to establish a *prima facie* case, it can always rearrest a defendant and take him before another magistrate if the statute of limitations has not run.  *See id.* at 13 (citations omitted).  The unique nuance here is that Ulysse turned twenty-one before the Commonwealth refiled the charges.  Thus, the Commonwealth could not refile in Juvenile Court; it could only refile the charges in the Criminal Division.

*Id.* at 14 (footnote omitted). The Commonwealth emphasizes that the Juvenile Court never reached the public interest factors on certification, because it preliminarily concluded that there was no *prima facie* case. **See id.** at 12.

We agree that the Commonwealth could not appeal the denial of transfer here, because the court found no *prima facie* case; the court did not deny transfer and allow the case to proceed in juvenile court. Our case law supports the Commonwealth's argument that it can refile charges against a juvenile when the court denies certification and/or dismisses the charges for lack of a *prima facie* case.

For example, our Supreme Court allowed such a refiling in **In re Riggins** 254 A.2d 616, 617 (Pa. 1969). There, a group of juveniles went into a bar where one fired a shotgun and killed a patron. Upon learning that the police considered him a suspect, a juvenile defendant surrendered to the police and was formally arrested and arraigned on a murder charge. **Id.** At the preliminary hearing, the judge ruled that the Commonwealth had not made out a *prima facie* case and discharged the defendant. **Id.** The Commonwealth appealed to the Supreme Court.

The Supreme Court quashed the appeal. It explained that if the Commonwealth deemed itself aggrieved by a magistrate's decision to discharge a defendant, it could refile the charges and bring the matter before any other officer empowered to hold preliminary hearings. **See id.** Because

the Commonwealth had not been put out of court, the Supreme Court quashed the appeal as interlocutory. *Id.* at 617-18.

The same reasoning applies here. Significantly, at the certification hearing, the Commonwealth never established the *prima facie* case required by section 6355(a)(4)(i) of the Juvenile Act. Therefore, if the Commonwealth had appealed the original order that denied Ulysse's transfer for failure to make out a *prima facie* case, that appeal would have been quashed as interlocutory as in ***Riggins***. Instead, the Commonwealth's recourse was to refile the charges against Ulysse, which it did.[5]

The denial of the transfer here did not implicate double jeopardy, because the case did not proceed to a juvenile adjudication. This is the second possible outcome from a certification hearing the Commonwealth identified. If the Commonwealth had set forth a *prima facie* case and the

_____

[5] Ulysse argues in his reply brief that ***Riggins*** does not support the conclusion that the Commonwealth's proper recourse was to rearrest him because, although the defendant in ***Riggins*** was a juvenile, he was charged with murder. Ulysse's Reply Brief at 7-9.

The ***Riggins*** case explained that the practice in Philadelphia in cases where a juvenile was accused of murder was to hold preliminary hearings before juvenile court judges. *See **Riggins***, 254 A.2d at 617 n.1. Murder is also excluded from the definition of a delinquent act under the Juvenile Act. *See* 42 Pa.C.S.A. § 6302. Nevertheless, we disagree with Ulysse that ***Riggins*** does not apply here. Because the Juvenile Act includes a requirement for the court to find a *prima facie* case, ***Riggins*** still supports the idea that, if the juvenile court finds no *prima facie* case, the Commonwealth may not immediately appeal but may rearrest the juvenile. *See **Riggins, supra***; Pa.R.J.C.P. No. 336.

court denied certification based on the public interest factors, then the Commonwealth could have taken an immediate interlocutory appeal as of right. *See McCord*, 664 A.2d at 1049.[6] This Court has explained:

> [W]ith respect to an order which denies transfer to criminal court or grants transfer to juvenile court, [the Commonwealth is] effectively deprived of review of the transfer order if it is required to wait until final disposition of the case before it may appeal. Once a defendant is the subject of an adjudication and disposition in juvenile court, principles of double jeopardy would, presumably, preclude the re-prosecution of defendant as an adult. The practical effect of not allowing the Commonwealth to immediately appeal the transfer order would be to render the trial court's "interlocutory order," a final order without any right of appeal. Thus, we conclude that an order denying certification of the juvenile defendant as an adult effectively terminates the criminal prosecution of the juvenile. We, therefore, hold that an order, which denies transfer of the juvenile defendant's case to criminal court, is an interlocutory order which is immediately appealable.

*Id.* (internal citations and footnote omitted).

Here, however, the Juvenile Court order denied the Commonwealth's request to transfer the case to criminal proceedings for failure to set forth a *prima facie* case that Ulysse committed a felony delinquent act. *See* Order Regarding Request for Transfer to Criminal Proceedings, 8/19/20. We agree with the Commonwealth that this order did not implicate double jeopardy concerns, because Ulysse was not then subject to an adjudication and

---

[6] Because the order here did not implicate double jeopardy, it differs from transfer orders that are decided on public interest considerations set forth in section 6355(a)(4)(iii), which have been determined to be immediately appealable.

disposition in Juvenile Court. *See McCord*, 664 A.2d at 1049.[7] And, notably, Ulysse does not argue that double jeopardy prevents his adult prosecution. As the Juvenile Court judge stated, the case was "over." N.T., 8/19/20, at 102. Because there was no adjudication on the merits, the Commonwealth did not have to appeal but could withdraw the case and refile the charges.[8]

This Court allowed the Commonwealth to refile charges in another juvenile case that was discharged without an adjudication on the merits. In *Commonwealth v. A.G.*, 955 A.2d 1022, 1023 (Pa. Super. 2008), the trial court dismissed the original charges against a juvenile after the Commonwealth failed to meet a short discovery deadline. The juvenile had been arrested and charged with various offenses, including attempted murder, related to a stabbing. *Id.* There was no discovery available on the date of the adjudicatory hearing, so the trial judge ordered discovery to be completed within a week. *Id.* When the Commonwealth was still unable to provide the discovery at that time, the court discharged the case. *Id.* A few months later,

---

[7] We acknowledge that Ulysse's juvenile file contains a court order adopting the hearing officer's recommendation "after an Adjudicatory Hearing." *See* Recommendation – Adjudicatory Hearing, 12/10/20. However, the court's only finding was that the Commonwealth's "motion to withdraw all charges is Granted." *Id.* The court then discharged Ulysse from in home detention. *Id.* Thus, although this order states it occurred after an adjudicatory hearing, there was no true juvenile adjudication and disposition, such that double jeopardy would preclude Ulysse from being prosecuted as an adult.

[8] Nevertheless, as discussed *supra*, even if the Commonwealth had attempted to appeal the Juvenile Court's transfer order, the Juvenile Court would have lost jurisdiction over Ulysse as soon as he turned twenty-one, which was less than one month after the Juvenile Court entered its order.

the Commonwealth rearrested the juvenile and refiled the case. *Id.* On the second attempt, discovery was provided, but the original trial judge held that because the Commonwealth violated the original discovery order, the order was also binding for the rearrest. *Id.* Thus, the trial court dismissed the case. The Commonwealth appealed.

This Court reversed because double jeopardy did not attach to the first proceeding, and the Commonwealth could rearrest the juvenile. We explained,

> Pennsylvania Rule of Juvenile Court Procedure[] 336(a) states that, a juvenile may be rearrested after the allegations have been dismissed prior to jeopardy attaching if the statute of limitations has not expired. In general, an accused may be rearrested and prosecuted despite the dismissal of charges at the preliminary hearing. A finding by a committing magistrate that the Commonwealth has failed to establish a *prima facie* case is not a final determination, such as an acquittal, and only entitles the accused to his liberty for the present, leaving him subject to rearrest. A magistrate's decision to dismiss criminal charges after a preliminary hearing is unappealable; therefore, the reinstitution of charges is the only recourse available to the Commonwealth after it fails to establish a *prima facie* case at a preliminary hearing. Moreover, when reviewing the dismissal of a complaint for the failure to produce witnesses, this Court has held that re-filing the complaint was the proper remedy.

*Id.* at 1024 (internal citations, quotation marks, and brackets omitted).

We observed that "there was never an evidentiary hearing nor was A.G. found delinquent . . . ; therefore, jeopardy did not attach and the Commonwealth had the right to rearrest the juvenile." *Id.* (citing Pa.R.J.C.P. No. 336). "Furthermore, the **only** remedy the Commonwealth had when the charges were dismissed for failure to present the necessary discovery—

namely a police witness—was to rearrest A.G. and provide the needed discovery." *Id.* (emphasis in original).

As this Court noted, Rule of Juvenile Court Procedure 336 specifically allows the Commonwealth to refile a delinquency petition and rearrest a juvenile if a case is withdrawn or dismissed before trial.[9] The juvenile can then seek to dismiss the refiled petition if the statute of limitations[10] has expired or there is other prejudice to the juvenile.

_____

[9] Rule 336 provides:

> **A. Re-filing.** The attorney for the Commonwealth may re-file a petition after the petition has been withdrawn pursuant to Rule 335 or dismissed by the court.
>
> **B. Motion for dismissal.** The court may entertain a motion by the juvenile to dismiss the re-filed petition.
>
> *Comment:* A juvenile may be rearrested after the allegations have been dismissed prior to jeopardy attaching if the statute of limitations has not expired. The petition should be dismissed upon a finding that the attorney for the Commonwealth acted to harass the juvenile, the offenses are beyond the statute of limitations, or there is some other prejudice to the juvenile.
>
> If a petition is re-filed, the procedures of Rule 330 are to be followed. It may be necessary to have a detention hearing under the procedures of Rule 240(C).

Pa.R.J.C.P. No. 336 (internal citations omitted).

[10] Here, there was no statute of limitations issue. As of November 2019, a prosecution for certain sexual offenses including rape, involuntary deviate sexual intercourse, sexual assault, and incest, where the "victim was under 18 years of age at the time of the offense" may be commenced at any time. *See* 42 Pa.C.S.A. § 5551(7). Further, a prosecution for sexual offenses such
*(Footnote Continued Next Page)*

Here, the only difference between A.G. and Ulysse is that Ulysse turned twenty-one before the Commonwealth filed the new charges. By that time, Ulysse was no longer within the jurisdiction of the Juvenile Court. Thus, the Commonwealth prosecuted Ulysse as an adult because the court that now had jurisdiction over him was the Criminal Division. **See Armolt, supra**.

In his reply brief, Ulysse focuses on the language of the denial order and argues that the case was not "dismissed," but that the transfer was denied for failure to meet the *prima facie* case. Ulysse's Reply Brief at 3. Ulysse stresses that "regardless of how the court framed its denial of transfer, there is no analog in juvenile court to a preliminary hearing in adult court, no testing of the evidence that can result in a dismissal of the charges." **Id.** at 6. According to Ulysse, the "proceedings in juvenile court do not include a preliminary hearing." **Id.** at 10. Moreover, Ulysse asserts that the "Commonwealth's claim that the juvenile case was dismissed . . . is belied by the record." **Id.** Ulysse claims that after the Juvenile Court entered its order denying transfer, the matter continued to be listed in Juvenile Court, until the Commonwealth moved to withdraw the charges in December 2020. **Id.** at 12.

_____

as indecent assault, indecent exposure, and corruption of minors "committed against a minor who is less than 18 years of age" may be commenced "any time up to the later of the period of limitation provided by law after the minor has reached 18 years of age or the date the minor reaches 55 years of age." **See** 42 Pa.C.S.A. § 5552(c)(3). Here, when the Juvenile Court held the certification hearing, the Complainant was still a minor.

Preliminarily we note that Ulysse did not raise this argument with the trial court. In fact, he conceded that the court held a preliminary hearing to determine whether the Commonwealth met its burden to establish a *prima facie* case. In his motion to dismiss, he stated that "a certification hearing was held in Juvenile Court. In accordance with the statute governing juvenile transfer proceedings, the [c]ourt first held a preliminary hearing." Motion to Dismiss, 4/28/21, at ¶ 3. Ulysse went on to explain, a "certification hearing consists of two parts. First, a preliminary hearing is held. At the preliminary hearing the court will decide if a *prima facie* case was established and if the child committed a delinquent act." *Id.* at ¶ 10 (italics added).

As for dismissal, Ulysse stated after "finding that the Commonwealth did not establish a *prima facie* case, [the Juvenile Court judge] dismissed the charges against" Ulysse. *Id.* at ¶ 5 (italics added). He explained that at the certification hearing, the Juvenile Court determined that there was not a *prima facie* case showing that Ulysse had committed the crimes charged. *Id.* at ¶ 12. "At that point, there was no need to proceed to the amenability portion of the certification hearing because there was no case to be transferred from Juvenile Court to Criminal Court. Thus, [the Juvenile Court judge] promptly dismissed the case" against Ulysse. *Id.* *See also id.* at ¶ 13 (referring to the Juvenile Court's "decision to dismiss the case"); Motion to Amend Case Caption, 8/11/21, at ¶¶ 4-5 (Ulysse stating that the Juvenile Court held a preliminary hearing, and when the judge found that the Commonwealth did not establish a *prima facie* case, he denied the transfer and dismissed the

- 22 -

petition); N.T., 3/24/21, at 5 (defense counsel stating that the Juvenile Court dismissed the case, and it did not get past the preliminary hearing), 12.

Therefore, Ulysse represented to the trial court multiple times that the Juvenile Court held a preliminary hearing and dismissed the charges against him. He cannot now change his mind and argue on appeal: 1) that the Juvenile Court did not hold a preliminary hearing because no such creation exists in the Juvenile Act, or 2) that the Juvenile Court did not dismiss the charges against him. He has waived these arguments. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). *See also Commonwealth v. In re E.F.*, 995 A.2d 326, 327 (Pa. 2010) (referring, in a juvenile delinquency case, to the trial court holding a "preliminary hearing" and determining based on evidence at the hearing that the Commonwealth had established "a *prima facie* case." The court then proceeded to conduct a "certification hearing.").

Even if not waived, the language of the order denying certification is irrelevant. Although the Juvenile Court did not explicitly dismiss the charges in its transfer order, the court's finding that the Commonwealth had failed to establish a *prima facie* case implicitly dismissed the case. Put another way, as explained above, the Juvenile Court may have denied the transfer, but

contrary to Ulysse's argument, the case was not then going to proceed to a disposition in Juvenile Court.[11]

_____

[11] Ulysse attached the juvenile court docket as Exhibit C to his reply brief. However, this docket is not present in our certified record. Originally, the certified record omitted Ulysse's entire juvenile court file. On September 26, 2025, Ulysse filed a Motion to Correct Omissions in the Record Pursuant to Pa.R.A.P. 1926 with this Court, requesting that we direct the trial court to certify and transmit to us a supplemental record of Ulysse's juvenile court file. This Court ordered the trial court to do so, and the trial court complied. However, this supplemental record did not contain the juvenile court docket, and Ulysse filed no other motions or applications requesting further corrections of the original record.

It is well settled that the burden is ultimately on the appellant to ensure the record is complete on appeal. *See* Pa.R.A.P. 1921, Note; *see also, e.g., Mazzarese v. Mazzarese*, 319 A.3d 586, 596 (Pa. Super. 2024) (citations omitted). We generally may review and consider only items that are part of the certified record. *See, e.g., Mazzarese, supra*. Nevertheless, if the accuracy of a document in the reproduced record is undisputed, we may consider it. *See Commonwealth v. Barnett*, 121 A.3d 534, 545 n.3 (Pa. Super. 2015) (citation omitted).

In its brief, the Commonwealth notes that the Juvenile Court's docket entry related to transfer was inaccurate and cannot control. *See* Commonwealth's Brief at 15 n.9. Nevertheless, even if we can consider the docket, it does not change our disposition. From the docket, we see that the Juvenile Court entered its transfer order on August 19, 2020. Thereafter, on November 25, 2020, there were four docket entries. The first entry stated, "Certification Hearing Scheduled 12/10/2020 12:00PM" and "Administrative Relist (special list 11/25/2020)." Similarly, the third entry again noted an "Administrative Relist." The second and fourth entries showed that the parties had received notice of the hearing. The next entries on December 10, 2020, related to the Commonwealth withdrawing the charges against Ulysse, and the Juvenile Court granting that motion and discharging Ulysse from in home detention. Nevertheless, as noted *infra*, pursuant to Rule 336, the Commonwealth would have been permitted to withdraw and refile the delinquency petition against Ulysse and to rearrest him if he was still a juvenile. *See* Pa.R.J.C.P. No. 336. Ulysse cites no authority which persuades us that the Commonwealth could not refile charges against him simply because he had turned twenty-one in the interim.

Moreover, we agree that the Juvenile Act does not provide for a preliminary hearing in typical juvenile cases, where the juvenile is alleged to have committed a delinquent act. However, when the juvenile court is conducting a certification hearing, the Commonwealth must prove a *prima facie* case that the juvenile committed the delinquent act, before the juvenile court can transfer the case to adult criminal court. **See** 42 Pa.C.S.A. § 6355(a)(4)(i). Similarly, at a preliminary hearing in an adult criminal case, the Commonwealth must prove that "there is a *prima facie* case that (1) an offense has been committed and (2) the defendant has committed it." Pa.R.Crim.P. 542(D); **see also** Pa.R.Crim.P. 543(B). Thus, although the proceeding under the Juvenile Act is called a certification hearing, it contains the same determination as a preliminary hearing in the criminal context.

Because the Criminal Division had jurisdiction to try Ulysse on the charges against him, which the Commonwealth was permitted to refile after the Juvenile Court dismissed the charges for lack of a *prima facie* case, Ulysse's first issue merits no relief.

In his second issue, Ulysse alleges procedural and substantive due process violations.

Ulysse argues that "the Commonwealth disregarded all procedure, all precedent, all statutory requirements, and subverted the lawful order of a court with proper jurisdiction." Ulysse's Brief at 26. Ulysse was deprived of the opportunity to be heard on the initiation of criminal proceedings against

him before he was charged as an adult, an opportunity that is given to other criminal defendants first charged in juvenile court. *See id.* at 26-27.

Ulysse asserts that he has not been treated with fundamental fairness. *See id.* at 28. According to him, it "was fundamentally unfair for the Commonwealth to arbitrarily and capriciously deny" him of his "legislative entitlement to be prosecuted in juvenile court." *Id.* Ulysse claims that he was afforded the benefits of the Juvenile Act, which are substantial, and was then deprived of them in a lawless, arbitrary, and unfair way by the Commonwealth. *See id.* at 30-31. Ulysse also claims the Commonwealth has "engaged in a certain degree of gamesmanship." *Id.* at 35.

Conversely, the Commonwealth argues that Ulysse's constitutional claims are waived because he failed to fairly present them in his motion to dismiss at the trial court. Commonwealth's Brief at 17 (citation omitted). Ulysse's counsel's statements at the sentencing hearing regarding Ulysse reserving the ability to appeal could not have revived claims that he had already waived. *See id.* at 17-18 (citations omitted). The Commonwealth asserts that, regardless of waiver, Ulysse's claims are patently meritless. *Id.* at 18. Because a pretrial dismissal and discharge at the preliminary hearing stage is not equivalent to a determination that a case should remain in "juvenile court for a juvenile adjudicatory hearing instead of a trial in adult court, there was no statutory violation and no fundamental unfairness." *Id.* at 18-19.

In one sentence of his reply brief, Ulysse argues that he preserved his substantive due process arguments on appeal by his "arguments in the courts below regarding the Commonwealth's statutory and rules-based procedural violations under state law." Ulysse's Reply Brief at 15. Significantly, Ulysse cites nothing in the record to support his assertion, and he fails to address how this Court's prior decision regarding waiver in his first appeal impacts this appeal. *See* Pa.R.A.P. 2119(c), (e).

As noted above, pursuant to his plea agreement and judgment of sentence, Ulysse maintained the right to appeal issues he had previously raised in *A.U.* Although this Court quashed Ulysse's appeal in *A.U.*, we noted that he waived any claims regarding substantive and procedural due process by failing to raise those issues in his motion to dismiss.

Specifically, we explained:

> Ulysse also asserts that his claims to substantive and procedural due process will be lost if review is delayed. Ulysse's Br. at 40-41. Ulysse, however, waived these claims by failing to raise the issues in his Motion to Dismiss, where he merely mentioned the term "fundamental fairness" without development. Motion to Dismiss, 4/28/21, at ¶ 17; *see* Pa.R.A.P. 302(a).

*A.U.*, 301 A.3d at *2 n.6 (Ulysse's name added).

However, as this Court ultimately quashed Ulysse's appeal, we are not bound by the panel's decision regarding waiver. Nevertheless, we agree that Ulysse failed to develop any issues related to due process in his motion to dismiss. Ulysse simply stated that for "reasons of fundamental fairness and

judicial economy" the trial court should "decline the Commonwealth's invitation" to grant it a second bite at the apple and should dismiss the charges. *See* Motion to Dismiss, 4/28/21, at ¶ 17; Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Ulysse failed to mention the words "due process" or develop any arguments related to due process. Because he failed to properly raise these issues to the trial court in his motion to dismiss, he has waived them. *See* Pa.R.A.P. 302(a).

Moreover, on appeal, his due process claims are based on his belief that the Commonwealth acted improperly by refiling the charges against him and not appealing the Juvenile Court's interlocutory transfer order.[12] As explained above, the Commonwealth was permitted to refile Ulysse's charges and could not appeal the transfer order. Thus, Ulysse's second issue, even if preserved, would merit no relief.

In sum, we discern no error upon review of the trial court's decision to deny Ulysse's motion to dismiss. The Juvenile Court lost jurisdiction over Ulysse once he turned twenty-one. The Adult Criminal Court had jurisdiction over Ulysse. The Commonwealth did not have to appeal the order denying

---

[12] Even if Ulysse had properly raised and developed due process arguments related to his criminal prosecution, two Justices on our Supreme Court have indicated their belief that although these types of arguments raise legality-of-sentence claims which cannot be waived, these claims fail on the merits. *See* *Armolt*, 294 A.3d at 392-93 (Wecht, J., concurring with Donohue, J., joining) (explaining that "no constitutional-based legality-of-sentence claim can succeed because . . . [the defendant] could claim no right (constitutional, statutory, or otherwise) to a juvenile disposition of his charges.")

certification, but, instead, was permitted to refile charges against Ulysse as an adult.  Ulysse has waived his due process claims.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/5/2026